UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

PHOENIX LIGHT SF LTD., ET AL.,

                **Plaintiffs,**

        **- against-**


DEUTSCHE BANK NATIONAL TRUST CO.,

               **Defendant.**

————————————————————————

**14-cv-10103 (JGK)**

**OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

    This case, like many others before it, is about residential mortgage-backed securities ("RMBS") trusts. Phoenix Light SF Limited ("Phoenix") and nine other special-purpose investment vehicles (collectively "the plaintiffs") that invested in RMBS Trusts filed this action against Deutsche Bank National Trust Company ("Deutsche Bank" or the "defendant"). Deutsche Bank was the RMBS Trustee for 55 Trusts in which the plaintiffs had invested (the "Covered Trusts" or "Trusts"). The Second Amended Complaint ("SAC") alleges that Deutsche Bank violated its duties as the RMBS Trustee to ensure that the documents relating to the mortgage files were complete, to ensure that the servicers of the mortgage loans were acting prudently, and to give notice to all the parties to the Pooling and Servicing Agreements ("PSAs") and Indenture Agreements (together, "Agreements") that governed

the Covered Trusts that there were ongoing breaches of representations and warranties by the sponsors or originators of the Trusts and by the servicers of the Trusts. The plaintiffs assert, among other things, that Deutsche Bank's conduct as RMBS Trustee breached the PSAs and Indenture Agreements; violated the Trust Indenture Act of 1939 ("TIA"), 15 U.S.C. § 77aaa, et seq., and New York's Streit Act, N.Y. Real Prop. Law § 124, et seq.; breached the fiduciary duty Deutsche Bank owed to the plaintiffs; and was negligent or grossly negligent.

Deutsche Bank now moves to dismiss portions of the SAC. For the reasons explained below, Deutsche Bank's motion is **granted in part and denied in part**.

### I.

Deutsche Bank moves to dismiss parts of the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.

1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

## II.

The Court accepts the plaintiffs' allegations in the SAC as true for the purposes of this motion to dismiss. The plaintiffs are holders of RMBS certificates issued by certain Trusts for which Deutsche Bank served as the Trustee. The Trusts were

created between 2005 and 2007. The Plaintiffs currently hold RMBS certificates with an original face value of over $935 million. SAC ¶ 3.

The main plaintiff, Phoenix, is a private limited company incorporated under the laws of Ireland with its principal place of business in Ireland. SAC ¶ 16. The other plaintiffs are special purpose entities that were formed to issue securities in securitization transactions referred to as "collateralized debt obligations" or CDOs. SAC ¶¶ 16-25. The plaintiffs are CDO issuers that invested in RMBS certificates and then issued notes pursuant to an indenture or an agreement. SAC ¶ 28.

In the course of briefing the present motion, the parties agreed to dismiss claims relating to 4 Trusts, Dkt. Nos. 60 & 61, leaving only the claims pertaining to 51 Trusts. The Trusts were created in a mortgage loan securitization process whereby mortgage loans were originated and pooled together in various trusts. The sponsor of the trust acquired the mortgage loans and then sold the large pool of loans to a depositor. The depositor conveyed the pool of loans to a trustee pursuant to a PSA. SAC ¶¶ 50-52. Trust certificates were issued for particular tranches in the trust and the certificates were sold to an underwriter, which in turn sold the certificates to investors, like the plaintiffs. SAC ¶ 52. The servicer for each trust manages the collection of mortgage payments in return for a fee, and the

servicer is tasked with monitoring loan performance, the rate of default, and compliance with representations and warranties; the servicer is also tasked with foreclosing and disposing of properties. SAC ¶ 53. Each tranche in an RMBS trust has a different level of risk, and credit rating agencies assign a particular rating to each tranche. Senior tranches receive a greater percentage of payment compared to the payment allocated to junior tranches. SAC ¶ 55.

Deutsche Bank is the RMBS Trustee pursuant to the PSAs or the Indenture Agreements for the Covered Trusts. SAC ¶¶ 50, 52, 58. The RMBS Trustee delivers to the certificate holders reports that describe the performance of the loans. SAC ¶ 54. The PSAs set forth the process by which the loans are conveyed to a trust, namely the process in which the sponsor conveys loans to the depositor and the depositor conveys loans to Deutsche Bank as Trustee. SAC ¶ 59. Among the duties set forth in the PSAs, Deutsche Bank must acknowledge receipt of the loan documentation and retain physical possession of the documents. SAC ¶¶ 60, 62. Deutsche Bank or a custodian was also required to issue a final certification and exception report that identified the files that were missing documents. SAC ¶ 63. The SAC alleges that in the event of documentation deficiencies, Deutsche Bank was required to demand that the sponsor cure defects or repurchase or substitute defective loans. SAC ¶ 65. Some of the PSAs

specified that repurchase was not available after a specified period of time, typically two years after the trust closed. SAC ¶ 66.

According to the SAC, Deutsche Bank was also required to provide notice of breaches of covenants and representations and warranties by the sponsors or originators and by the servicers of the mortgages in the Trusts. SAC ¶¶ 67-69. The SAC alleges that Deutsche Bank was aware of a widespread default rate and underperforming loans because (1) several foreclosure actions were commenced on Deutsche Bank's behalf, SAC ¶¶ 97-98; (2) the mortgage industry was widely plagued by predatory lending practices and deficient underwriting guidelines, SAC ¶ 100; (3) there were several highly publicized RMBS lawsuits, including Deutsche Bank's actions against certain sponsors and mortgage loan originators and actions brought by monoline insurers against sponsors for breaches of representations and warranties concerning underwriting standards, SAC ¶¶ 102, 104, 115, 143-44; and (4) there were widespread downgrades in the credit rating of RMBS Trusts due to high rates of default and delinquencies, SAC ¶ 109. According to the SAC, despite being aware of the widespread breaches of representations and warranties, Deutsche Bank did not provide notice of these defaults to the plaintiffs. SAC ¶ 117.

The SAC further alleges that Deutsche Bank became aware of "Events of Default" under the Agreements and did not take action. Among the alleged events of default, Deutsche Bank allegedly knew that servicers were engaging in "robo-signing" to foreclose on properties. SAC ¶¶ 123, 128. The servicers were required to provide a conforming annual certification that they were complying with the terms of the PSA. According to the SAC, Deutsche Bank received certifications it knew to be false because it knew the servicers were not satisfying their duties under the PSAs, and the failure to provide a conforming certification is allegedly an event of default under the PSAs. SAC ¶¶ 138-40. The SAC alleges that with respect to the Trusts governed by Indenture Agreements, Deutsche Bank was aware that the parties tasked with the duty of protecting the collateral of the trusts had failed to satisfy their obligations. SAC ¶¶ 132-34. This failure allegedly constituted an event of default under the Indenture Agreements. SAC ¶ 135.

The SAC alleges additional misconduct by the servicers of the Trusts, including allegations that the servicers charged improper and excessive fees and purchased insurance policies for properties that were already insured. SAC ¶ 149. According to the SAC, this misconduct triggered Deutsche Bank's duty to act prudently. The SAC alleges that Deutsche Bank failed to take action as required by the PSAs and Indenture Agreements because

it was constrained by a conflict of interest. Among other things, Deutsche Bank was allegedly involved in underwriting securities using subprime mortgage loans. SAC ¶ 154. Deutsche Bank's affiliates were also involved in securitizing mortgage loans with very high non-performance rates. SAC ¶ 157.

The plaintiffs allege that they have suffered over $525 million in damages. SAC ¶ 161. The plaintiffs contend that if Deutsche Bank had satisfied its obligations under the PSAs and Indenture Agreements, the plaintiffs' holdings would not have decreased so markedly in value, and that if Deutsche Bank had provided notice of the breaches of representations and warranties, the sponsors or originators of the loans would have been forced to substitute or repurchase loans. SAC ¶ 164. Of the Trusts in this case, 45 Trusts are governed by PSAs, and 6 Trusts are governed by Indenture Agreements. Dkt. No. 60, Exs. A & B.

The SAC alleges several causes of action against Deutsche Bank: (1) violations of the TIA for those Trusts that are governed by Indenture Agreements,[1] ("Count 1") SAC ¶¶ 167-76; (2) breach of contract because Deutsche Bank allegedly breached several obligations under the Agreements, ("Count 2") SAC ¶¶

---

[1] The plaintiffs agree that TIA claims for Trusts governed by PSAs are foreclosed by <u>Retirement Board of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon</u>, 775 F.3d 154 (2d Cir. 2014). <u>See</u> Dkt. No. 60; Brody Decl., Ex. B.

177-86; (3) breach of fiduciary duty because Deutsche Bank allegedly did not act in good faith and was hindered in its performance of its duties under the PSAs and indenture agreements by conflicts of interest, ("Count 3") SAC ¶¶ 187-90; (4) negligence and gross negligence, ("Count 4") SAC ¶¶ 191-93; (5) violation of the Streit Act, N.Y. Real Prop. Law § 124 et seq., because Deutsche Bank allegedly did not exercise due care in administering the mortgage trusts, ("Count 5") SAC ¶¶ 194-201; and (6) breach of the covenant of good faith, ("Count 6") SAC ¶¶ 202-06.

### III.

The SAC sets out three basic theories of Deutsche Bank's liability under the various state and federal laws: (1) Deutsche Bank failed to identify the missing documentation and to issue the final exception reports as required by the PSAs and consequently Deutsche Bank failed to compel the sponsors to repurchase defective loans, SAC ¶¶ 63-66; (2) Deutsche Bank was required to provide notice to all parties of breaches of representations and warranties by the sponsors and servicers but failed to do so, SAC ¶¶ 67-69; and (3) Deutsche Bank had a duty to address the servicers' failure to meet prudent servicing standards. SAC ¶¶ 80-81, 86.

**A.**

Deutsche Bank moves to dismiss various claims alleged in the SAC on the grounds that the limitations periods have expired on those claims. Deutsche Bank argues that the claims pertaining to the 5 IndyMac Trusts are time barred because all the facts the SAC alleges regarding these Trusts occurred before 2008. Deutsche Bank also argues that the claims with respect to the other 46 Trusts are time barred because the claims arose between 2005 and 2007 when the mortgages were deposited into the Trusts.

**(1)**

Deutsche Bank moves to dismiss the plaintiffs' claims related to the IndyMac Trusts, Brody Decl., Ex. D, arguing that the plaintiffs' claims for breach of contract, breach of fiduciary duty, violation of the Streit Act, negligence and gross negligence, and violation of the TIA are all barred under the various statutes of limitations.[2] IndyMac was placed into receivership on July 11, 2008, and on May 29, 2009, Deutsche

---

[2] The parties do not dispute the limitations periods for the various claims. The longest statute of limitations is six years. An action for breach of contract is subject to a six-year statute of limitations. N.Y.C.P.L.R. § 213(2). Violations of the TIA are subject to a six-year statute of limitations. Cruden v. Bank of N.Y., 957 F.2d 961, 967 (2d Cir. 1992) (applying the statute of limitations of a contract claim to the TIA). An action for breach of fiduciary duty is subject to statute of limitations that runs three years after the plaintiff suffered the alleged injury. IDT Corp. v. Morgan Stanley, 907 N.E.2d 268, 272-73 (N.Y. 2009). Negligence actions are subject to a three-year statute of limitations. N.Y.C.P.L.R. § 214(4). There is no specific provision establishing a statute of limitations for a Streit Act claim but it would be either three years under N.Y.C.P.L.R. § 214(2) (an action to recover upon a liability created by statute) or six years under N.Y.C.P.L.R. § 213(1) (an action for which there is no limitation specifically prescribed by law).

Bank, as RMBS Trustee, initiated a lawsuit against IndyMac for breaching the Trust Agreements. The claims pertaining to the IndyMac Trusts are limited to Deutsche Bank's inaction in responding to servicing failures and breaches of the representations and warranties in the PSA prior to the time IndyMac was placed into receivership. The current action was filed on December 23, 2014, more than six years after IndyMac was placed into receivership.

According to Deutsche Bank, the plaintiffs allege that Deutsche Bank breached its obligation pursuant to the Agreements to cause IndyMac to repurchase allegedly defective loans and remedy its servicing violations. Deutsche Bank contends that the plaintiffs' allegations stem from Deutsche Bank's alleged failure to take action against IndyMac before July 2008 and any claims against Deutsche Bank are thus time barred under either the six-year or three-year statute of limitations that apply to the various claims. The plaintiffs argue that they do not assert claims against Deutsche Bank for failing to put back loans to IndyMac. The plaintiffs argue that Deutsche Bank failed to address failures by the servicers to service the mortgage loans prudently and failed to provide notice to the plaintiffs of ongoing breaches. E.g., SAC ¶¶ 182, 200. However, the plaintiffs' claims concerning the servicing failures and Deutsche Bank's lack of response and notice occurred before

IndyMac was placed into receivership in 2008, and these claims
for servicing failures are the very claims Deutsche Bank argues
are time barred. SAC ¶¶ 86, 110.

The only argument the plaintiffs make to salvage their
claims with respect to the IndyMac Trusts is that the breach of
fiduciary duty claim is not time barred because the statute of
limitations only begins to run once the trustee has openly
repudiated its duty to challenge the sponsor or the servicer,
something Deutsche Bank has not done. See Golden Pac. Bancorp v.
F.D.I.C., 273 F.3d 509, 518 (2d Cir. 2001). However, as Deutsche
Bank points out, the open repudiation doctrine applies only when
the remedy sought is an accounting or other form of equitable
relief, not a remedy at law. Willensky v. Lederman, No. 13-cv-
7026 (KMK), 2015 WL 327843, at *10 & n.21 (S.D.N.Y. Jan. 23,
2015); Stern v. Barney, 12 N.Y.S.3d 74, 75 (App. Div. 2015);
Ingham ex rel. Cobalt Asset Mgmt., L.P. v. Thompson, 931
N.Y.S.2d 306, 308 (App Div. 2011). Because the tolling rule only
applies to claims for accounting or equitable relief and the
plaintiffs' claims are claims at law for damages, the breach of
fiduciary duty claim in this case was not tolled by the open
repudiation doctrine. While the plaintiffs stated at the
argument of the motion that they also sought equitable relief,
there is no particular form of equitable relief specified in the
SAC and the plaintiffs have not explained what equitable relief

would be available against Deutsche Bank with respect to the
IndyMac Trusts.

Thus, the plaintiffs' claims concerning the 5 IndyMac
Trusts are time barred and should be dismissed.

**(2)**

Deutsche Bank also moves to dismiss portions of the
plaintiffs' breach of contract, breach of the covenant of good
faith, TIA, and Streit Act claims as they pertain to all the
Trusts. Deutsche Bank argues that those claims are time barred
because the initial pooling of the loans and the deposit of the
underlying documents occurred before 2008, and the SAC alleges
that Deutsche Bank failed to ensure that the loan documentation
files were complete. The SAC outlines Deutsche Bank's duties
with respect to ensuring the documents in the mortgage files
were complete, and alleges that Deutsche Bank had the duty to
certify that the documentation for the Trusts was full and
complete. SAC ¶¶ 62-63, 65, 78 (put back obligations and missing
documentation); SAC, Ex. C. The plaintiffs implicitly concede
that any claims arising from the faulty deposit of the initial
documentation of the loans would be time barred. Pls.' Mem. of
Law in Opp. to Mot. at 12-13.

Deutsche Bank argues that the claims hinge on allegations
that Deutsche Bank breached its duties to enforce remedies when
the final exception report, detailing any missing documents, for

each Trust was issued. The Trusts closed between March 29, 2005 and July 12, 2007, and the final exception report was issued on April 24, 2008. Brody Decl., Ex. V. The complaint in this case was filed on December 23, 2014. Any claims arising from facts prior to December 23, 2008, the longest statute of limitations applicable to any of the claims, would be time barred. <u>Supra</u> note 3.

The plaintiffs argue, however, that the allegations that Deutsche Bank breached its duties under the Agreements to respond to breaches of representations and warranties and under the Agreements and state law to respond to an Event of Default are different from claims that Deutsche Bank failed to take physical possession of the mortgage files when the Trusts were formed and did not deliver exception reports in 2008 flagging missing documentation. The statute of limitations for each cause of action does not bar the plaintiffs' claims that pertain to Deutsche Bank's failure to carry out its duty to respond to servicing failures or provide notice of breaches of representations and warranties. The duties arising from known servicing failures and breaches of representations and warranties are distinct from Deutsche Bank's document and certification duties. <u>See</u> <u>Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n</u>, 109 F. Supp. 3d 587, 607-09 & n.121 (S.D.N.Y. 2015) (concluding that claims related to document delivery,

14

receiving mortgage loan files, and creating certification and exception reports were time barred).

Claims for document delivery failures are barred by the statute of limitations. SAC ¶¶ 121-22, 164-65. But the majority of claims are not barred. Claims based on allegations that Deutsche Bank discovered breaches of representations and warranties in 2009 and 2010 and took no action, SAC ¶ 100, or allegations that "Deutsche Bank stood by while the Sponsors, Servicers and Master Servicers of the Covered Trusts engaged in so called 'robo-signing' on a widespread basis when the missing documents were needed to foreclose on properties" are not time barred. SAC ¶ 123. The SAC also alleges that when borrowers defaulted on their mortgages, the servicers began fabricating the documents necessary to foreclose on the loans. According to the SAC, Deutsche Bank was aware that the servicers were fabricating the loan documentation based on Deutsche Bank's earlier knowledge and the exception reports. SAC ¶ 128-30; SAC, Ex. G ¶¶ 4-5. The allegations of Deutsche Bank's failure to address servicing failures are also not time barred.[3]

_____

[3] The claims in the sprawling SAC are not limited to claims within the statute of limitations. The SAC begins with a description of the securitization process that dates back to the creation of the Trusts and the document deficiencies and then proceeds to describe the servicing failures and the alleged breaches of the representations and warranties by the sponsors and servicers that occurred within the statute of limitations period. When the SAC turns to the briefly-described Causes of Action, the SAC simply repeats and realleges "each and every allegation set forth in the preceding paragraphs above as if fully set forth herein." See, e.g., SAC ¶ 167. Deutsche Bank, in turn conceded at the argument of the motion that it was not

Moreover, there are other bases for the servicing failures that are based on allegations that fall within the limitations period. The SAC alleges, for example, that the servicers improperly charged borrowers and breached the prudent servicing standard, thereby triggering Deutsche Bank's duty to act prudently. SAC. ¶ 151. The SAC also alleges that Deutsche Bank suffered from conflicts of interest. Deutsche Bank allegedly did not take action to protect the Trusts because it was "engaged in the same servicing misconduct in its role as a sponsor, originator and servicer for other mortgages and RMBS trusts." SAC ¶ 159.

Similarly, to the extent that the claims for breach of contract, breach of the covenant of good faith, TIA violations, and Streit Act violations are based on facts that took place after the loans were in the Trusts, they are not time barred. See SAC ¶ 86. Therefore, Deutsche Bank's motion to dismiss these causes of action based on the statute of limitations is granted only to the extent that the claims are based on the failure of Deutsche Bank to object initially to document delivery failures.

---

seeking to dismiss the various claims on the basis of the statute of limitations—because the claims included allegations within as well as outside the statute of limitations. Rather, it was simply attempting to give the claims in the case a "haircut" by trimming off the time-barred allegations.

(3)

Deutsche Bank also moves to dismiss the tort claims for breach of fiduciary duty, negligence, and gross negligence as time barred. The applicable statute of limitations is three years for these claims. Supra note 2. Deutsche Bank argues that the facts underlying these claims were known to the plaintiffs prior to December 2011 because the plaintiffs cite numerous articles and lawsuits from 2010 that reflected the widely known problems in mortgage loan documentation and servicing. According to Deutsche Bank, the plaintiffs would have discovered the injury arising from Deutsche Bank's alleged torts and would have been able to bring these claims before 2014 when they actually brought the tort claims.

The plaintiffs argue that the statute of limitations for a tort claim arising from the failure of an RMBS Trustee to assert claims for repurchase of loans only accrues after the six-year deadline for the RMBS trustee to bring claims has passed. The plaintiffs cite National Credit Union Administration Board v. HSBC Bank USA, 117 F. Supp. 3d 392 (S.D.N.Y. 2015), in which Judge Scheindlin determined that the extender provision of 12 U.S.C. § 1787(b)(14) applied to the statute of limitations for various breach of contract and tort claims and extended the applicable limitations period by six years. Id. at 401-03. The extender provision applies to claims brought by the National

Credit Union Administration Board ("NCUAB") as conservator or liquidating agent for a Federal Credit Union. While the claims in Judge Scheindlin's case were brought by the NCUAB as liquidating agent for various federal credit unions, that entity is not involved in this case and the plaintiffs fail to explain how the extender provision has any relevance at all to this case.

The plaintiffs argue more persuasively that the facts alleged in the SAC are insufficient for this Court to conclude, as a matter of law, that the plaintiffs were put on notice of their claims before 2011. See Landesbank Baden-Wurttemberg v. RBS Holdings USA Inc., 14 F. Supp. 3d 488, 503 (S.D.N.Y. 2014) (collecting cases). There are questions of fact as to when the claims accrued, whether the violations were continuing, and whether the statute of limitations should be tolled. See NCUA, 117 F. Supp. 3d at 403. Therefore, Deutsche Bank's motion to dismiss the tort claims cannot be granted on the grounds they are time barred.

**(4)**

The defendants move to dismiss the breach of contract representation and warranty claims concerning MSAC 2007-NC4, arguing that the plaintiffs acknowledge that Deutsche Bank provided notice of alleged breaches of representations and warranties and is presently enforcing repurchase claims against

the sponsor of that trust in Deutsche Bank National Trust Co v. Morgan Stanley Mortgage Capital Holdings LLC., No. 652877/2014 (N.Y. Sup. Ct. Cnty. Jan 23, 2015). SAC ¶ 102. The plaintiffs argue that Deutsche Bank's suit is vulnerable to timeliness defenses, and that the suit does not assert claims against the servicers for failure to service the loans prudently. The motion to dismiss cannot be granted on this basis. On a motion to dismiss, the Court cannot gauge the success or failure of Deutsche Bank's efforts, whether its claims were timely, and whether Deutsche Bank's claims in the state court litigation satisfy its alleged duty to enforce repurchase obligations.

## B.

Deutsche Bank moves to dismiss the plaintiffs' breach of contract claim on several additional bases: (1) because the plaintiffs lack standing to enforce the PSAs under the provisions of the Agreements in 17 Trusts; (2) because the SAC fails to plead that Deutsche Bank knew of any breaches of representations and warranties prior to an Event of Default; and (3) because the SAC fails to allege a breach of Deutsche Bank's obligations that arose after an Event of Default.

## (1)

Deutsche Bank moves to dismiss the plaintiffs' breach of contract claims relating to 17 Trusts because the Agreements for

those Trusts contain "negating clauses." The Agreements provide
that enforcement may be sought by registered holders of the
securities. Brody Decl., Ex. M. "Certificateholder" or "Holder"
is "[t]he [p]erson in whose name a Certificate is registered in
the Certificate Register[.]" Biron Decl., Ex. 52, § 1.01.
According to the PSAs, "Nothing in this Agreement or in the
Certificates, expressed or implied, shall give to any Person,
other than the Certificateholders and the parties hereto and
their successors hereunder, any benefit or any legal or
equitable right, remedy or claim under this Agreement." Id. §
11.10; Brody Decl., Ex. M. The PSAs provide a cumbersome
mechanism by which the beneficial owners of the certificates can
be recognized as holders of the certificates, but the plaintiffs
do not argue that they have sought recognition as
certificateholders. Biron Decl., Ex 52, § 5.02(c).

    According to Deutsche Bank, the plaintiffs are not
certificateholders and are at most beneficial owners of
interests in the Trusts. Deutsche Bank contends that negating
clauses in the Agreements preclude the plaintiffs from asserting
claims and thus, the plaintiffs lack standing. The parties do
not dispute that the Depository Trust Company, also known as
Cede & Co., is the registered holder of the RMBS Certificates.
But the plaintiffs respond that the term "holder" in the PSAs
was intended to include beneficial owners of the RMBS

certificates. The plaintiffs argue that Cede & Co. has no real interest and has not suffered any injury in connection with the breach of representations and warranties. This interpretation of the Agreements, however, ignores the plain language of the PSA provisions that treats registered holders differently from beneficial owners and would render superfluous the provision of the PSA that provides a mechanism for beneficial owners to enforce the agreements. Biron Decl., Ex. 52, § 5.02(c); see Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 86 (2d Cir. 2002) (interpretations that render a contract provision superfluous are disfavored); Two Farms, Inc. v. Greenwich Ins. Co., 993 F. Supp. 2d 353, 360 (S.D.N.Y. 2014), aff'd, No. 14-318-CV, 2015 WL 6079559 (2d Cir. Oct. 16, 2015) ("Courts interpreting contracts pursuant to New York law are required to give each word and phrase in a contract its plain meaning and avoid rendering the terms or provisions of a contract superfluous.").

The plaintiffs do not point to any case law supporting their position that Cede & Co. lacks standing to assert claims and that beneficial owners are therefore, the rightful plaintiffs in a case against an RMBS Trustee. The plaintiffs argue that they can seek authorization from Cede & Co. to bring the claims against the 17 Trusts. Courts in this district have allowed plaintiffs to seek authorization from Cede & Co. even

when the contract does not specifically authorize them to do so because under New York law, contracts are freely assignable absent language that prohibits assignment. See Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co., No. 14-CV-4394 (AJN), 2016 WL 439020, at *3 (S.D.N.Y. Feb. 3, 2016); HSBC, 109 F. Supp. 3d at 607 & n.111 (the plaintiffs had already begun the process of seeking authorization from Cede & Co.). And in similar cases, plaintiffs have been allowed to cure their lack of standing. See id.; One William St. Capital Mgmt. v. U.S. Educ. Loan Tr. IV, 986 N.Y.S.2d 21, 22 (App Div. 2014) (petitioner cured lack of standing by adding Cede & Co. as a nominal plaintiff).

The plaintiffs represent that they are in the process of obtaining Cede & Co.'s consent to bring this case as an authorized proxy. On March 2, 2016, the plaintiffs submitted a list of the trusts for which they received Cede & Co.'s authorization. They received authorization for all but 3 Trusts. The plaintiffs have cured their lack of standing with respect to those trusts. The plaintiffs may thus pursue breach of contract claims with respect to the trusts for which they have authorization. The claims with respect to the other trusts for which authorization is pending are dismissed without prejudice, subject to the plaintiffs' curing their lack of standing.

**(2)**

Deutsche Bank also moves to dismiss the plaintiffs' breach of contract claim to the extent that the plaintiffs seek to allege a breach of a pre-Event of Default duty. The gist of some of the allegations in the SAC is that Deutsche Bank breached its pre-Event of Default duties by failing to investigate and give the investors notice of breaches of the representations and warranties. If Deutsche Bank had provided the required notices that alerted the investors of the breaches, then the sponsors would have been forced to repurchase the loans of lower quality than warranted or to substitute the loans with loans that met underwriting standards. SAC ¶ 110. The plaintiffs allege that this was a continuing duty and that Deutsche Bank failed to comply with that duty throughout its tenure as Trustee.

Deutsche Bank also moves to dismiss the breach of contract claim to the extent it alleges that Deutsche Bank breached its post-Event of Default duties. The plaintiffs allege that when Deutsche Bank learned that the servicers failed to provide notice of numerous breaches of representations and warranties, Deutsche Bank failed to comply with its contractual duty to act as a prudent person and require cures and provide notice to the certificateholders of the defaults by the servicers.

**i.**

Deutsche Bank argues that the SAC does not allege Deutsche Bank had knowledge of the alleged breaches of representations and warranties. Without actual knowledge, Deutsche Bank contends that the Agreements do not impose any obligations on Deutsche Bank, that no post-Event of Default duties were triggered, and that it did not have a duty to make any investigation independent of the plaintiffs' own obligation to bring problems with the trusts to the Trustee's attention. Deutsche Bank argues, in essence, that the SAC must plead that Deutsche Bank knew of specific breaches of representations and warranties by the originators or servicers with respect to each loan.

To prevail ultimately on the breach of contract claim, a plaintiff does have to demonstrate breach on a "'loan-by-loan and trust-by-trust basis.'" Royal Park, 2016 WL 439020, at *6 (quoting Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chi. v. Bank of N.Y. Mellon ("PABF"), 775 F.3d 154, 162 (2d Cir. 2014)). But this is not a pleading requirement.

> At the pleading stage, plaintiffs cannot be required to identify breaches of representations and warranties with respect to the individual loans in the specific trusts—such information is, at this stage, . . . is uniquely in the possession of defendants. Rather, plaintiffs satisfy their burden where their allegations raise a reasonable expectation that discovery will reveal evidence proving their claim.

Policemen's Annuity & Ben. Fund of City of Chi. v. Bank of Am.,
NA, 943 F. Supp. 2d 428, 442 (S.D.N.Y. 2013)(internal quotation
marks and citation omitted), abrogated in part on other grounds
by PABF, 775 F.3d 154 (2d Cir. 2014); Okla. Police Pension &
Ret. Sys. v. U.S. Bank Nat'l Ass'n, 291 F.R.D. 47, 69-70
(S.D.N.Y. 2013), abrogated in part on other grounds by PABF, 775
F.3d 154 (2d Cir. 2014); see also Royal Park Invs, SA v. The
Bank of N.Y. Mellon, No. 14-cv-6502 (GHW), 2016 WL 899320, at
*4-*5 (S.D.N.Y. Mar. 2, 2016); Blackrock Core Bond Portfolio v.
U.S. Bank Nat'l Ass'n, No. 14-CV-9401 (KBF), 2016 WL 796848, at
*15 (S.D.N.Y. Feb. 26, 2016).[4]

A plaintiff is not required to plead the specific actual
knowledge of a defendant with respect to the particular
deficiencies of a particular loan. Other courts have noted that
plaintiffs can survive a motion to dismiss by alleging massive
breaches of representations and warranties and by referring to
the mortgage industry's practices of ignoring underwriting
guidelines and engaging in predatory lending. Bank of N.Y.
Mellon, 2016 WL 899350, at *5; Blackrock, 2016 WL 796848, at
*16; HSBC, 109 F. Supp. 3d at 601-02; Policemen's/BofA, 943 F.
Supp. 2d at 442 ("Indeed, based on the allegations of the SAC,

---

[4] Deutsche Bank argues that the plaintiffs should not rely on Oklahoma Police
because it was decided before the decision of the Second Circuit Court of
Appeals in PABF. But PABF addressed the standards for a class action, 775
F.3d at 162-63, and did not concern the pleading requirements for actual
knowledge.

it would be implausible to assume that somehow all of the mortgage loans underlying the MBS miraculously avoided being originated with practices generally utilized throughout WaMu and its contracted affiliates at that time."). In this case, the exhibits to the SAC include specific examples of alleged problems with origination policies. E.g., SAC, Ex. F at 6. The SAC alleges that sponsors and originators of the loans have been investigated for deficient underwriting practices, and that the knowledge of these lawsuits and investigations would have alerted Deutsche Bank to the ongoing breaches of representations and warranties. SAC ¶ 115. The SAC also alleges that Deutsche Bank knew the loans were underperforming. SAC ¶ 116. The contract claims cannot be dismissed for failure to plead actual knowledge with respect to pre-Event of Default obligations.

### ii.

Deutsche Bank argues that it did not have a pre-Event of Default obligation to enforce representations and warranties. Deutsche Bank recognizes that the allegations in the SAC plead that Deutsche Bank "may have been alerted to potential misconduct by sponsors and originators and a risk of R&W falsity." Def.'s Mem. of Law in Supp. of Mot. at 23. Deutsche Bank argues that it had no duty to investigate based on publicly available information and cites to provisions in the Agreements that indicate that Deutsche Bank could rely on the documents in

the trust, and that the trustee was "not to be bound to make any investigation into the facts or matters stated in any . . . certificate, statement, instrument, [or] opinion" unless requested to do so in writing by a majority certificate holder. Biron Decl., Ex. 1-a § 6.02(a), Ex. 52 § 8.02(a)(v). However, it is clear that if the trustee discovered or received information of any materially defective document in the mortgage file or of a breach by the originator or seller of a representation or warranty, then the trustee did have an obligation to notify the servicer and take action. Biron Decl., Ex. 52 § 2.03(a). The SAC alleges that Deutsche Bank had a duty under the Agreements to provide notices of breaches of representations and warranties. SAC ¶¶ 67, 110. The contract claims cannot be dismissed on the ground that the Agreements did not trigger any obligations prior to an Event of Default.

Deutsche Bank also argues that for 39 of the Trusts, the PSAs did not require Deutsche Bank to enforce repurchase obligations. For 21 of the trusts, Deutsche Bank contends that there was no enforcement duty on the RMBS Trustee, and for 18 Trusts, Deutsche Bank contends that the enforcement duties were only triggered by the receipt of a written notice of breach. However, the SAC alleges that Deutsche Bank had the duty to give prompt notice of potential breaches of representations and warranties to the sponsors or the originators and that this

27

notice would have forced the sponsors or the originators to
repurchase or substitute other loans for the defective loans.
E.g., SAC, Ex. C at 65-66 (Trusts AABST 2006-1 and FFML 2006-
FF11); SAC ¶ 110. Deutsche Bank does not argue that the PSAs and
Indentures exempted it from providing this notice of the alleged
breaches. The SAC sufficiently alleges a breach of contract
based on Deutsche Bank's failure to provide this notice. This
allegation does not depend on whether Deutsche Bank had a duty
to enforce repurchase obligations, and provisions detailing the
Trustee's repurchase obligations do not preclude an action
against Deutsche Bank for failing to provide notice.

Thus, Deutsche Bank's motion to dismiss the plaintiff's
breach of contract claim based on Deutsche Bank's pre-Event of
Default obligations cannot be granted on these grounds.

**(3)**

With respect to the breach of contract claims arising from
Deutsche Bank's alleged breach of its post-Event of Default
obligations, the SAC alleges that Deutsche Bank was required to
notify investors of the occurrence of an Event of Default and
act as a prudent person in exercising its rights and powers
under the PSAs. SAC ¶¶ 70, 74, 118.

Deutsche Bank argues that the SAC fails to show that an
Event of Default ever occurred. Deutsche Bank claims that an
Event of Default only occurs after notice has been given to the

28

servicers of possible breaches and that no notice was given. Deutsche Bank also claims that the SAC does not allege any breaches of any particular trust agreement. Under the Agreements, an Event of Default requires three things: (1) a material breach by a servicer, (2) notice to the servicer of its material breach or knowledge by a servicing officer of the material breach, and (3) the servicer's failure to cure the breach. E.g., Biron Decl., Ex. 52, § 7.01(a)(ii).

There are sufficient allegations in the SAC that Deutsche Bank was aware of breaches of representations and warranties by the servicers and that an Event of Default occurred. The SAC sufficiently pleads that Deutsche Bank was aware that the servicers and sponsors of the Trusts were engaging in robo-signing, attempted to cover-up massive deficiencies in the documents in the Trusts and breached prudent servicing standards, SAC ¶¶ 123, 128, and that Deutsche Bank was aware that the servicers were failing to act prudently. SAC ¶ 129; see Bank of N.Y. Mellon, 2016 WL 899320, at *6; Blackrock, 2016 WL 769848, at *18-*19; Fixed Income Shares: Series M v. Citibank N.A., No. 14-cv-9373 (JMF), 2015 WL 5244707, at *12 (S.D.N.Y. Sept. 8, 2015); HSBC, 109 F. Supp. 3d at 602-03; Okla. Police, 291 F.R.D. at 69-70; Ret. Bd. of the Policemen's Annuity & Ben. Fund of City of Chi. v. Bank of N.Y. Mellon, 914 F. Supp. 2d

422, 432 (S.D.N.Y. 2012), aff'd in part, rev'd in part, by, PABF, 775 F.3d 154 (2d Cir. 2014).

Deutsche Bank also argues that the Agreements for 11 Trusts require written notice to a sponsor of a breach of a representation or warranty and an opportunity for the sponsor to cure the breach before an Event of Default can occur. This argument is unavailing. Deutsche Bank cannot take advantage of its own failure to give notice to the sponsor of the possible breaches of representations and warranties to argue that no Event of Default occurred. The prevention doctrine precludes such a defense. An RMBS Trustee cannot rely on the lack of notice to excuse its own failure to act. Royal Park, 2016 WL 439020, at *5; Fixed Income, 2015 WL 5244707, at *11("But Citibank may not excuse its failure to perform the additional duties required of it after an Event of Default by pointing to its own failure to give notice; that is, Citibank is not permitted to take advantage of its own wrong."(internal citation and quotation marks omitted)); HSBC, 109 F. Supp. 3d at 605; Okla. Police, 291 F.R.D. at 70-71; SAC ¶ 119.[5] Thus, Deutsche

---

[5] Deutsche Bank argues that the prevention doctrine does not save the plaintiffs' claim because Deutsche Bank did not have an affirmative duty to notify the servicers of their material breaches. But Deutsche Bank recognizes that the district court in Fixed Income concluded that even without a contractual requirement to give notice, the prevention doctrine would apply to a party who insists on the performance of a condition precedent when the non-performance is caused by the party itself. 2015 WL 5244707, at *11. This approach is consistent with the decision of Court of Appeals in In re Bankers Tr. Co., 450 F.3d 121, 127 (2d Cir. 2006).

Bank's motion to dismiss the breach of contract claim with
respect to Deutsche Bank's post-Event of Default duties cannot
be granted on this basis.

With respect to 38 Trusts, Deutsche Bank argues that the
Trusts require actual knowledge by a responsible officer of the
RMBS Trustee that an Event of Default occurred. The SAC alleges
actual knowledge by describing Deutsche Bank's involvement in
RMBS litigation and receipt of notices from monoline insurers
who were pursuing actions against servicers, as well as alarming
rates of default and rating downgrades. SAC ¶¶ 100-02, 103-09.
On a motion to dismiss, these allegations are sufficient to
plead Deutsche Bank's actual knowledge with respect to Events of
Default. See Bank of N.Y. Mellon, 2016 WL 899320, at *6
(collecting cases).

Deutsche Bank also argues that 9 Trusts require actual
receipt of a written notice of an Event of Default by a
responsible officer of the RMBS Trustee.[6] Deutsche Bank contends
that the plaintiffs did not plead receipt of a written notice
and that the breach of contract claims should therefore be
dismissed. However, the SAC alleges that the Association of
Mortgage Investors notified all major RMBS trustees, including
Deutsche Bank, about the abuses in servicing and monitoring of

---

[6] Deutsche Bank initially argued that 12 Trusts were subject to this
requirement, but Deutsche Bank withdrew this argument as to 3 Trusts. See
Def.'s Reply at 12.

RMBS. SAC ¶ 142. The SAC further alleges that Deutsche Bank received instructions from institutional investors in 2011 about the need to investigate loan pools. SAC ¶¶ 143-44. These allegations sufficiently plead that Deutsche Bank received actual notice of alleged Events of Default. See BNP Paribas Mortg. Corp. v. Bank of Am., N.A., 778 F. Supp. 2d 375, 399 (S.D.N.Y. 2011) (concluding that formal written notices are not required unless the indenture explicitly sets out the format of the notice).

Moreover, in BNP Paribas, the court concluded that based on the applicable indentures, an allegation that a trustee had actual knowledge was sufficient to state a claim for breach of the indenture even in the absence of a written notice. 778 F. Supp. 2d at 397-98. In this case, the PSAs require the Trustee to act if it has actual knowledge of an event of default. E.g., Biron Decl., Ex. 41, § 8.01 ("In case of an Event of Default has occurred and remains uncured, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person."). Therefore, the contract claims cannot be dismissed based on Deutsche Bank's argument that Deutsche Bank did not receive notice.

**(4)**

Deutsche Bank also argues that the plaintiffs' contract claims are barred by no-action clauses contained in the Agreements of all the Trusts. A "no-action" clause requires a certificate holder to provide the Trustee with a written notice of an Event of Default, prove that the suit is supported by twenty-five percent of the voting rights in the trust, and make a written request to the Trustee to file suit, indemnify the Trustee, and give the Trustee time to act. E.g., Biron Decl., Ex. 52 § 11.03; Ex. 41 § 10.08. Deutsche Bank does not seek to enforce all aspects of the no-action clauses. Deutsche Bank only argues that the requirements of attaining a twenty-five percent pre-suit consensus and providing written notice to the RMBS Trustee of an event of default should be enforced because they are intended to avoid duplicative litigation.

The plaintiffs correctly point out the futility of making a request to Deutsche Bank because Deutsche Bank, as the RMBS Trustee, is the target of the plaintiffs' lawsuit. See Cruden, 957 F.2d at 968. Deutsche Bank recognizes that a pre-suit demand on Deutsche Bank is unnecessary but argues that severability provisions in the Agreements require enforcing the other aspects of the no action clause. Deutsche Bank does not point to any precedent supporting dismissal based on severing certain no-action clause requirements. Indeed, Cruden has been interpreted

33

by several courts to preclude the outcome Deutsche Bank seeks.
See Royal Park, 2016 WL 439020, at *3 ("However, Cruden's
holding was not limited to the pre-suit demand provision; the
Second Circuit held that the entire no action clause, which
included both a pre-suit demand requirement and a written notice
requirement, did not apply to the Trustee in that case.");
HSBC, 109 F. Supp. 3d at 606; Sterling Fed. Bank, F.S.B. v. DLI
Mortg. Capital, Inc., No. 09-cv-6904 (JFG), 2010 WL 3324705, at
*4 (N.D. Ill. Aug. 20, 2010). Cf. Blackrock, 2016 WL 796848, at
*13-*14 (concluding that Cruden did not answer the issue of
severability but determining that "when a demand requirement
falls, the entire provision falls, including the written-notice
requirement"). Therefore, the no action clause does not provide
a basis for dismissing the plaintiffs' breach of contract
claims.

   In sum, Deutsche Bank's motion to dismiss Count 2, the
contract claim, is granted only to the extent the plaintiffs
lack standing to pursue claims with respect to the 3 Trusts that
contain negating clauses and for which they have not yet
received authorization from Cede & Co., see Brody Decl., Ex. E,
and is denied in all other respects.

## C.

Deutsche Bank moves to dismiss all the tort claims in the SAC, Counts 3 and 4, for breach of fiduciary duty and for negligence and gross negligence, respectively.

The SAC alleges that Deutsche Bank breached its fiduciary duty to the Certificateholders upon the occurrence of an Event of Default. According to the SAC, Deutsche Bank, as RMBS Trustee, was bound to act prudently to protect the plaintiffs' interests. SAC ¶¶ 74-76. The SAC alleges that Deutsche Bank did not perform its duties under the PSAs and Indenture Agreements competently and was negligent in failing to exercise due care in performing its ministerial duties in the administration of the trusts. SAC ¶¶ 13, 88-89.

Deutsche Bank makes several arguments in support of its motion to dismiss the tort claims: (1) the tort claims are duplicative of the contract claims; (2) the economic loss doctrine bars the tort claims; (3) Deutsche Bank does not owe a fiduciary duty to the plaintiffs; (4) Deutsche Bank did not have a conflict of interest; (5) the Trusts bar claims against Deutsche Bank for tort liability and the SAC fails to state a claim for negligence or gross negligence.

### (1)

With respect to Deutsche Bank's argument that the tort claims are duplicative, it is well established that if "the

basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative." Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 58 (2d Cir. 2012). However, "[w]here an independent tort duty is present, a plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct." Id. Under New York law, "an indenture trustee owes a duty to perform its ministerial functions with due care, and if this duty is breached the trustee will be subjected to tort liability." AG Capital Funding Partners, L.P. v. State St. Bank & Tr. Co., 896 N.E.2d 61, 67 (N.Y. 2008). Moreover, after an Event of Default, an indenture trustee's fiduciary duties expand under the New York common law such that "'fidelity to the terms of an indenture does not immunize an indenture trustee against claims that the trustee has acted in a matter inconsistent with his or her fiduciary duty of undivided loyalty to trust beneficiaries.'" BNP Paribas, 778 F. Supp. 2d at 401 (quoting Beck v. Mfr. Hanover Tr. Co., 632 N.Y.S.2d 520, 527-28 (App. Div. 1995)).

Some of the plaintiffs' negligence claims appear to be the type of claims that courts have dismissed as duplicative. In Fixed Income, the district court dismissed as duplicative a

negligence claim alleging that, "after Events of Default occurred, Citibank failed to notify investors of the originators' and sponsors' breaches of their obligations, to enforce sellers' obligation to cure, or to enforce servicers' obligations." Fixed Income, 2015 WL 5244707, at *13. In this case, the negligence claims in the SAC are based in large part on the requirements of the PSAs, namely the duties set forth in the PSAs requiring that Deutsche Bank give notice to all parties of breaches of representations and warranties and provide notices of servicing related breaches. SAC ¶ 89.

These claims are not distinct from the duties in the PSAs and the Indenture Agreements and do not provide an independent basis for tort liability. See Phoenix Light SF Ltd. v. Bank of N.Y. Mellon, No. 14-cv-10104 (VEC), 2015 WL 5710645, at *7 (S.D.N.Y. Sept. 29, 2015) (concluding that allegations that heightened duties including a duty to make prudent decisions were triggered by an event of default were duties that were subsumed within the language of the PSAs and indentures and did not give rise to a separate breach of fiduciary duty claim); HSBC, 109 F. Supp. 3d at 609 (concluding that an allegation that the RMBS trustee failed to perform or performed its responsibilities in a grossly inadequate and negligent manner was only actionable in contract).

However, the other tort allegations in the SAC that Deutsche Bank did not avoid conflicts of interest, breached its fiduciary duty after an Event of Default, and did not take due care in performing ministerial acts are not duplicative.[7] See Nat'l Credit Union Admin. V. U.S. Bank Nat'l Ass'n, No. 14-cv-9928 (KBF), 2016 WL 796850, at *11 (S.D.N.Y. Feb. 25, 2016); Phoenix Light, 2015 WL 5710645, at *7 (recognizing that the duty to avoid conflicts of interest is an extra-contractual duty that should be pleaded as a negligence action); HSBC, 109 F. Supp. 3d at 609 n.127 (recognizing a post-Event-of-Default fiduciary duty and distinguishing between negligently performing contractual duties and the "independent duty to perform [] nondiscretionary ministerial duties with due care and to avoid conflicts of interest").[8]

---

[7] In the SAC, the plaintiffs appear to conflate the duty to perform ministerial acts with due care with their allegations that Deutsche Bank negligently performed or failed to perform certain duties under the contract. Only tort claims premised on the former survive because New York recognizes a duty to perform ministerial acts as an extra contractual duty. AG Capital, 896 N.E.2d at 67.

[8] The SAC includes a discursive history of the actions of Deutsche Bank as Trustee and then includes all of those allegations by incorporation in all the specific causes of action including Counts 3 and 4 for breach of fiduciary duty and for negligence and gross negligence. It is not possible therefore to dismiss those causes of action even though they incorporate some references that are not actionable because they include some allegations that are actionable as torts. See supra note 3. This form of pleading is not ideal and leaves to further motion practice a realistic determination of the scope of the tort claims in this case.

**(2)**

Deutsche Bank also argues that the plaintiffs' tort claims are barred by the economic loss doctrine. A plaintiff cannot seek damages by bringing a tort claim when the injury alleged is primarily the result of economic injury for which a breach of contract claim is available. BNP Paribas Mortg. Corp. v. Bank of Am., N.A., 949 F. Supp. 2d 486, 505 (S.D.N.Y. 2013). The dispositive issue is whether Deutsche Bank owed duties to the plaintiffs that were separate from the duties set forth in the PSAs and the Indenture Agreements. Several of the plaintiffs' arguments supporting the negligence, gross negligence, and breach of fiduciary claims are not duplicative of the breach of contract claim. Thus, the motion to dismiss the tort claims cannot be granted on this basis. See Royal Park, 2016 WL 439020, at *9 (allowing tort claims to proceed where the alleged duty was extra-contractual); but see Blackrock, 2016 WL 796848, at 21; U.S. Bank, 2016 WL 796850, at *11 (dismissing a breach of fiduciary claim under the economic loss doctrine because the damages arising from the claim "sound in defendants' failure to take contractual actions").

**(3)**

Deutsche Bank argues that an RMBS trustee does not owe a fiduciary duty to investors and thus Count 3 should be dismissed. The plaintiffs counter that the breach of fiduciary

duty claim focuses on the alleged failure to act prudently to protect the certificateholders after an Event of Default. The plaintiffs appear to recognize that the conflict of interest claims and the claims that Deutsche Bank did not perform ministerial acts with due care are not proper breach of fiduciary claims under New York law, and can only be pleaded in the complaint as negligence claims. See AG Capital, 896 N.E.2d at 67; Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 192 (S.D.N.Y. 2011). Breach of fiduciary duty claims may be brought for acts that are outside the scope of contractual duties after an Event of Default. See Phoenix Light, 2015 WL 5710645, at *7; HSBC, 109 F. Supp. 3d at 609 ("[I]nsofar as plaintiffs allege a post-Event of Default breach of fiduciary duty, they properly state a claim[.]"); BNP Paribas, 778 F. Supp. 2d at 401. As discussed above, the plaintiffs sufficiently pleaded an Event of Default. Supra pp. 28-31. Thus, the motion to dismiss Count 3 for breach of fiduciary duty cannot be granted on this basis.

**(4)**

Deutsche Bank also argues that the SAC fails to plead that Deutsche Bank was subject to a conflict of interest. The SAC alleges that Deutsche Bank had a duty to avoid conflicts of interest and did not provide undivided loyalty to investors. SAC ¶ 90. The SAC alleges that "Deutsche Bank conducted repeated

business with the same Originators and Servicers and refused to take action in order to gain return favors when the roles were reversed." SAC ¶ 153. The plaintiffs also allege that Deutsche Bank was engaged in the same improper securitization processes, and that an affiliate of Deutsche Bank had been sued by RMBS trustees. SAC ¶¶ 153, 157.

Various courts have allowed similar conflict of interest allegations to survive in the RMBS trust context, when pleaded as a tort claim, as the plaintiffs have done. In its reply Deutsche Bank argues that several courts have dismissed "identical breach of fiduciary duty claim[s]" as duplicative, but Deutsche Bank misreads the cases. In Fixed Income Shares, the plaintiffs' breach of the duty of independence, negligence, and fiduciary duty claims survived a motion to dismiss because the plaintiffs' allegations that Citibank was beholden to servicers because it faced possible liability for the sale of its own loans were separate from the breach of contract claims. 2015 WL 5244707, at *13. A claim for breach of the duty to avoid conflicts of interest is therefore distinct from contract liability, and the SAC's allegations satisfy the requirements of a conflict of interest negligence claim. See Bank of N.Y. Mellon, 2016 WL 899320, at *7; Royal Park, 2016 WL 439020, at *9 ("The alleged quid pro quo system where Defendant turns a blind eye to breaches of [representations and warranties] in the hopes that

counterparties would later return the favor, if true, would demonstrate that the Defendant received a[ ] benefit from its decision not to act on the breaches of [representations and warranties], constituting a conflict of interest." (internal quotation marks and citation omitted)); HSBC, 109 F. Supp. 3d at 610; see also Phoenix Light, 2015 WL 5710645, at *7(concluding that conflict of interest allegations could be properly pleaded as a negligence action, not as a breach of fiduciary duty claim).

On the merits of the claims, Deutsche Bank argues that it was not subject to a conflict of interest based on Deutsche Bank's own involvement in mortgage loan securitization. Deutsche Bank contends that the conflict of interest theory relies only on a hypothetical conflict of interest. The plaintiffs point out that one of the mortgage loan originators was a Deutsche Bank affiliate. Whether Deutsche Bank was in fact subject to a conflict of interest arising from its own actions and association with mortgage loan originators is an issue that cannot be resolved on a motion to dismiss.

Therefore, Deutsche Bank's motion to dismiss the conflict of interest negligence claim cannot be granted on the basis that the SAC fails to plead the existence of a conflict of interest.

**(5)**

Deutsche Bank also argues that the Agreements bar an action for negligence based on duties that are not set forth in the Agreements. Biron Decl., Ex. 52 § 8.01(i) (no implied covenants shall be read into the Agreement prior to the occurrence of an event of termination). However, as the plaintiffs point out, the Agreements also include a provision stating that no provision in the agreement relieves the Trustee of liability for its own negligent actions. Id. § 8.01 ("No provision of this Agreement shall be construed to relief the Trustee from liability for its own negligent action, its own negligent failure to act or its own misconduct[.]"); SAC ¶ 88. The plaintiffs specifically point out that while the Trustee's liability may be limited to its negligence after an Event of Default, the Agreements do not appear to restrict actions alleging that the Trustee is liable for negligence in performing extra-contractual duties. Other courts have similarly allowed negligence claims to proceed despite the presence of exculpatory provisions in the PSAs because the PSAs did not unambiguously bar a negligence action. Phoenix Light, 2015 WL 5710645, at *8 (citing Fixed Income, 2015 WL 5244707, at *13). On a motion to dismiss, the negligence claim cannot be dismissed based on an argument that the Agreements bar a negligence action related to Deutsche Bank's

alleged conflicts of interest or duty of care with respect to ministerial acts in administering the trust.

Deutsche Bank also argues that the SAC fails to plead gross negligence or negligence with respect to Deutsche Bank's ministerial duties. Deutsche Bank contends that determining whether a servicer breached its obligations and whether to provide a notice of breach are not ministerial tasks. Whether the tasks were in fact ministerial or not is also not an issue that can be resolved on a motion to dismiss.

Therefore, Deutsche Bank's motion to dismiss Counts 3 and 4 is granted only with respect to claims that Deutsche Bank negligently failed to carry out the Trustee duties set forth in the Agreements that are duplicative of the breach of contract claim and is denied in all other respects.

### D.

Deutsche Bank also argues that Count 6, the claim for breach of the covenant of good faith, should be dismissed as duplicative of the breach of contract claim and because provisions of the Agreements bar any liability.

"New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002). A plaintiff can maintain a

claim for breach of the implied covenant of good faith and fair dealing simultaneously with a breach of contract claim "only if the damages sought by the plaintiff for breach of the implied covenant are not intrinsically tied to the damages allegedly resulting from breach of contract." Page Mill Asset Mgmt. v. Credit Suisse First Bos. Corp., No. 98-cv-6907 (MBM), 2000 WL 335557, at *8 (S.D.N.Y. Mar. 30, 2000) (internal quotation marks and citation omitted); see also Okla. Police, 291 F.R.D. at 72.

The plaintiffs argue that, under New York law, causes of action for breach of the implied covenant of good faith may be brought in the alternative when there is a dispute about the scope of the contract and the contractual duties. Because Deutsche Bank disputes that it owed the plaintiffs pre and post-Event of Default duties to provide notice and ensure that the servicers were acting prudently, the plaintiffs argue that the claim for breach of the implied covenant of good faith must survive the motion to dismiss. However, there is no dispute that the Agreements in this case are valid contracts and govern the parties' relations. Because the SAC's allegations supporting a breach of the implied covenant of good faith and fair dealing arise from the same facts as the breach of contract claim, Count 6 should be dismissed. See SAC ¶¶ 202-05, 177-84; U.S. Bank, 2016 WL 796850, at *12; Okla. Police, 291 F.R.D. at 72.

**E.**

The parties agree that under the decision of the Court of
Appeals in <u>PABF</u>, 775 F.3d at 154, TIA claims can only be
asserted with respect to the 6 Trusts that are governed by
Indenture Agreements.[9] The TIA claims with respect to the 45
Trusts that are governed by PSAs are therefore dismissed.

The SAC alleges that pursuant to § 315(b) of the TIA,
Deutsche Bank was required to give the plaintiffs notice of a
default under the Indenture Agreements within 90 days of
learning of a default. SAC ¶ 72; 15 U.S.C. § 77ooo(b). The
plaintiffs argue that because Deutsche Bank failed to give
notice of defaults and breaches of representations and
warranties, Deutsche Bank violated the TIA. Deutsche Bank argues
that the allegations that the RMBS Trustee violated TIA § 315(b)
fail because the trustee did not have knowledge of a default. As
discussed above however, there are sufficient allegations in the
SAC to plead that Deutsche Bank had actual knowledge of
defaults. SAC ¶¶ 94-97, 100-02, 103-08, 128, 137. 151.
Therefore, the § 315(b) claims cannot be dismissed for failure
to allege Deutsche Bank's actual knowledge.

---

[9] One of the 6 Indenture Trusts is also an IndyMac Trust, INABS 2006-H1. <u>See</u>
Brody Decl., Exs. B and D. Because the claims as to all the IndyMac Trusts
are time barred, the TIA claim for this Trust is dismissed on the basis that
it is time barred.

Deutsche Bank also argues that the plaintiffs' § 315(c) claim fails because the SAC does not allege that a "default" occurred. Under § 315(c) of the TIA: "The indenture trustee shall exercise in case of default (as such term is defined in such indenture) such of the rights and powers vested in it by such indenture, and to use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs." 15 U.S.C. § 77ooo(c) (emphasis added). Deutsche Bank argues that the definition of "Events of Default" in the Indenture Agreements controls the definition of the term "default" and an Event of Default never occurred. The TIA places duties on a trustee in case of default and leaves the definition of "default" to the parties. The term "default" means what the Indenture Agreements say it means, namely "[a]ny occurrence that is, or with notice or the lapse of time or both would become, an Event of Default." Fitzgerald Decl., Ex. 3; see Okla. Police, 291 F.R.D. at 67. Under the Indenture Agreements, a "default" is a prelude and precondition for an "event of default." The Indenture Agreements define an "Event of Default" differently from a "default" and Deutsche Bank's arguments to the contrary are unavailing. Thus, Deutsche Bank's motion to dismiss the plaintiffs' § 315(c) claims is denied. Moreover, the plaintiffs have sufficiently alleged that Deutsche Bank had knowledge of Events of Default

under the Indenture Agreements. See Bank of N.Y. Mellon, 2016 WL 899320, at *9 n.11.

Deutsche Bank also moves to dismiss the plaintiffs' claims under Section 316(b), which provides that "[T]he right of any [certificate]holder . . .to receive payment of the principal of and interest . . . shall not be impaired or affected without the consent of such holder." 15 U.S.C. § 77ppp(b); SAC ¶ 174. The plaintiffs argue that if Deutsche Bank had satisfied its duties, the plaintiffs would not have incurred the losses attributable to the defaults of the defective loans. District courts in this Circuit have rejected similar arguments, concluding that § 316(b) only addresses changes to the holder's legal rights in the form of involuntary debt restructurings or modifications to the terms of the indenture. Phoenix Light, 2015 WL 5710645, at *10; Marblegate Asset Mgmt. v. Educ. Mgmt. Corp., 75 F. Supp. 3d 592, 614 (S.D.N.Y. 2014) (discussing the statutory history and purpose of § 316(b)). The SAC does not allege any involuntary restructuring conduct by Deutsche Bank. Thus, Deutsche Bank's motion to dismiss the TIA claim, Count 1, is granted to the extent that the TIA claims with respect to the 45 Trusts covered by the PSAs are dismissed and the plaintiffs' TIA § 316(b) claim is dismissed with respect to the 6 Trusts covered by Indentures.

**F.**

Deutsche Bank moves to dismiss Count 5, the plaintiffs'
claim under the Streit Act. The Streit Act regulates "all
mortgage investments" where the properties are located in the
state, the trustee does business with respect to the investments
in New York, or the trustee is authorized to do business in New
York. N.Y. Real Prop. Law § 124. The Streit Act provides that no
Trustee shall accept a Trust under an indenture or mortgage
unless it contains various provisions including a provision
that, in the case of an event of default, the Trustee has a duty
to "exercise such of the rights and powers vested in the trustee
by such instrument, and to use the same degree of care and skill
in their exercise as a prudent man would exercise or use under
the circumstances in the conduct of his own affairs." Id.
§ 126(1). The SAC alleges that Deutsche Bank violated the Streit
Act by failing to exercise all its rights under the PSAs to
ensure that defaulted loans or loans for which representations
and warranties were breached were repurchased or substituted.
SAC ¶ 78. The parties agree that only the 45 PSA Trusts are
potentially subject to the Streit Act because they are not
covered by the TIA. See N.Y. Real Prop. Law § 130-k.

Deutsche Bank contends that the plaintiffs' Streit Act
claim fails as a matter of law because the SAC alleges that
Deutsche Bank violated post-Event-of-Default duties when in

49

fact, the Streit Act does not impose any post-Event-of-Default duties on a trustee.[10] Section 126(1) states that:

> No trustee shall hereafter accept a trust under any trust indenture or mortgage within the contemplation of this article or act as trustee thereunder unless the instrument creating the trust shall contain the following provisions, among others, which confer the following powers and impose the following duties upon the trustees . . . 1. In the case of an event of default (as such term is defined in such instrument), to exercise such of the rights and powers vested in the trustee by such instrument, and to use the same degree of care and skill in their exercise as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

N.Y. Real Prop. Law § 126(1). Deutsche Bank argues that New York Real Property Law § 126(1) does not create any additional duties for trustees beyond the duties in the PSAs, and only requires that certain types of provisions be included in the indenture agreement. Deutsche Bank is plainly correct.

In Phoenix Light, the district court concluded that the plaintiffs failed to state a claim under the Streit Act because the complaint did not allege that the trustee had accepted a deficient indenture. 2015 WL 5710645, at *11; Bank of N.Y. Mellon, 2016 WL 899320, at *11 ("Thus, while section 126 outlines duties and obligations that a trustee must undertake, it does not impose those duties; instead, it mandates that those

---

[10] Deutsche Bank also argues that the RMBS trusts are not "mortgage investments" under the Streit Act and that there is no private cause of action under the Streit Act for damages. It is unnecessary to reach these arguments.

terms be included in the indenture."); U.S. Bank, 2016 WL 796850, at *12.[11] On its face, § 126 requires only that a trust indenture contain certain provisions, such as the provision requiring a trustee to exercise rights and powers prudently in the case of an event of default. See N.Y. Real Prop. Law § 126(1). The PSAs at issue in this case included such provisions. E.g., Biron Decl., Ex. 52, § 8.01. The Streit Act does not address compliance with the provision that is required to be included in the indenture agreement. The SAC does not allege that the PSAs omitted any of the provisions that the Streit Act requires. Therefore, Count 5 of the SAC, the plaintiffs' Streit Act claim, should be dismissed.

---

[11] The plaintiffs submitted a letter arguing that there was a split of authority in this District on this issue. However, HSBC, on which the plaintiffs rely, does not address whether the Streit Act requires more than the inclusion of various terms in an indenture. 109 F. Supp. 3d at 610-11.

**CONCLUSION**

The Court has considered all of the arguments by the parties. To the extent not specifically addressed above, the parties' arguments are either moot or without merit. For the foregoing reasons, Deutsche Bank's motion to dismiss is **denied in part and granted in part**. The Clerk of Court is directed to close all pending motions.

**SO ORDERED.**

**Dated:**    **New York, New York**
             **March 28, 2016**

_____/s/_____

**John G. Koeltl**
**United States District Judge**