**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PHOENIX LIGHT SF DAC, BLUE HERON FUNDING V LTD., BLUE HERON FUNDING VI LTD., BLUE HERON FUNDING VII LTD., BLUE HERON FUNDING IX LTD., C-BASS CBO XIV LTD., C-BASS CBO XVII LTD., KLEROS PREFERRED FUNDING V PLC, SILVER ELMS CDO PLC and SILVER ELMS CDO II LIMITED, | Case No. 14-cv-10103-JGK-DCF <br><br> Hon. John G. Koeltl |
| Plaintiffs, | |
| v. | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY and DEUTSCHE BANK TRUST COMPANY AMERICAS, | |
| Defendants. | |
| COMMERZBANK AG, | Case No. 15-cv-10031-JGK-DCF <br><br> Hon. John G. Koeltl |
| Plaintiff, | |
| v. | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY and DEUTSCHE BANK TRUST COMPANY AMERICAS, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT**

Michael S. Kraut
Kevin J. Biron
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York  10178
Tel:  +1.212.309.6000

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ iv

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................... 5

    A.    RMBS Transactions Generally ........................................................ 5

    B.    Overview of the Governing Agreements ......................................... 6

        1.    Defendant's Limited Duties Under the Governing Agreements ............... 6

        2.    Servicers' Duties Under the Governing Agreements ................................ 8

        3.    Investors' Rights Under the Governing Agreements ................................ 8

    C.    Plaintiffs and Their Claims ............................................................. 8

LEGAL STANDARD ........................................................................................ 10

ARGUMENT ..................................................................................................... 10

I.    CONTRARY TO PLAINTIFFS' ASSERTION, DEFENDANT'S POST-EOD PRUDENT PERSON DUTY WAS NOT TRIGGERED IN 73 OF THE 85 TRUSTS ....................................................................................................... 10

    A.    Purported Servicing Breaches Relating to REO Properties Did Not Trigger Defendant's Post-EOD Duties in 73 Trusts ........................ 11

        1.    Background ................................................................................. 11

        2.    To Prevail, Plaintiffs Must Prove, With Respect to Each of the 73 Trusts, That the Relevant Servicer Materially Breached Its Contractual Duties and Failed to Cure After Knowledge/Notice ........... 13

        3.    Plaintiffs Cite No Admissible Evidence in Support of Their Argument .................................................................................... 15

        4.    Even if Plaintiffs Had Proof of Uncured Property Code Violations, Open Issues of Fact Would Still Preclude Summary Judgment ............. 20

        5.    Materiality Is a Question of Fact .............................................. 21

    B.    Alleged Late Servicer Compliance Documents Did Not Trigger Defendant's Post-EOD Duties in Eight Trusts .............................. 24

        1.    Plaintiffs Cannot Obtain Summary Judgment Because This Claim Is Not Pled ................................................................................. 24

        2.    Plaintiffs Have Not Proved an EOD Occurred in FHLT 2006-1 Because Plaintiffs Mistake the Identity of the Servicer ...................... 24

        3.    Plaintiffs Have Not Proved an EOD Occurred in the Other Seven Trusts .......................................................................................... 25

        4.    In Any Event, Any EOD That Resulted from Late ASOCs Was Cured ........................................................................................... 29

## TABLE OF CONTENTS
### (continued)

Page

II.   PLAINTIFFS HAVE FAILED TO PROVE THAT DEFENDANT BREACHED
      ANY POST-EOD PRUDENT PERSON DUTY ......................................................... 31

      A.   Plaintiffs Do Not Identify, Much Less Prove, What Defendant Was
           Supposedly Required to Have Done Differently ................................................... 32

      B.   With Respect to the Declared EODs, the Evidence Confirms Defendant's
           Decision to Provide Notice and Await Investor Direction Was Prudent ............. 34

      C.   Even if Plaintiffs Had Presented Any Evidence to the Contrary, Open
           Issues of Fact Would Still Preclude Summary Judgment ................................... 37

      D.   Plaintiffs Mischaracterize Defendant's Post-EOD Practices as "Doing
           Nothing" and Ignore Evidence Regarding the Steps that Defendant Took ........ 42

      E.   Defendant Cannot Be Liable Because It Believed in Good Faith That Its
           Actions Complied with the Governing Agreements ........................................... 43

      F.   Defendant's Response to Alleged REO Servicing Matters and Late
           ASOCs Was Reasonable and Prudent ................................................................. 44

III.  DEFENDANT'S AGREEMENT TO "HOLD THE TRUST FUND AND
      EXERCISE THE RIGHTS REFERRED TO ABOVE FOR THE BENEFIT OF
      . . . CERTIFICATEHOLDERS" DOES NOT CREATE A PRE-EOD DUTY TO
      ENFORCE R&W REPURCHASE OBLIGATIONS ......................................................... 45

      A.   Plaintiffs' Collateral Estoppel Argument Is Meritless ......................................... 45

      B.   Plaintiffs' Proposed Interpretation Is Incorrect .................................................... 47

IV.   THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR A
      SPECULATIVE RULING ON WHAT DUTIES DEFENDANT MIGHT HAVE
      HAD IF IT HAD FAILED TO PROVIDE NOTICE TO DEPOSITORS ....................... 49

V.    PLAINTIFFS' DOCUMENT EXCEPTION CLAIMS ARE NOT ACTIONABLE
      AND PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ................ 51

      A.   Document Exceptions and 2% Letters ................................................................. 52

      B.   Plaintiffs' Document Delivery Claims Are Time-Barred and Have Been
           Abandoned ........................................................................................................... 53

      C.   The 2% Letters Do Not Re-Start the Limitations Clock ...................................... 55

      D.   Materiality Is a Question of Fact That Precludes Summary Judgment ............... 57

      E.   The Court Should Not Grant Judgment With Respect to the Eight Trusts
           for Which Plaintiffs Claim Defendant "Failed to Notify the Depositor" ........... 58

VI.   PLAINTIFFS HAVE NOT PLED THAT DEFENDANT HAD OR BREACHED
      A DUTY ARISING FROM REG AB CERTIFICATIONS TO MONITOR
      SERVICERS, AND DEFENDANT HAD NO SUCH DUTY ........................................ 59

      A.   Summary Judgment Should Be Denied Because Plaintiffs Are Not
           Asserting Any Claim Relating to Defendant's Reg AB Certifications ................ 60

**TABLE OF CONTENTS**
**(continued)**

                                                                                      **Page**

B.      Summary Judgment Should Be Denied for the Additional Reason That
        Defendant Had No Duty to "Monitor" Mortgage Loan Servicers ...................... 61

CONCLUSION ......................................................................................................... 64

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACE Secs. Corp. v. DB Structured Prods., Inc.*,
  25 N.Y.3d 581 (2015) ........................................................................55

*Alexander v. Sandoval*,
  532 U.S. 275 (2001)..........................................................................62

*Alleghany Corp. v. Guar. Tr. Co.*,
  97 F.2d 367 (2d Cir. 1938).................................................................30

*Am. Fid. Assurance Co. v. Bank of N.Y. Mellon*,
  No. Civ-11-1284-D, 2018 WL 6582381 (W.D. Okla. Oct. 31, 2018)......................3

*Baldwin v. EMI Feist Catalog, Inc.*,
  805 F.3d 18 (2d Cir. 2015)..................................................................10

*Bank of N.Y. Mellon Tr. Co. v. Solstice ABS CBO II, Ltd.*,
  910 F. Supp. 2d 629 (S.D.N.Y. 2012)......................................................30

*Bear, Stearns Funding, Inc. v. Interface Grp.-Nev., Inc.*,
  361 F. Supp. 2d 283 (S.D.N.Y. 2005)..............................................21, 27, 56

*BlackRock Allocation Target Shares v. Wells Fargo Bank, N.A.*,
  Nos. 14-CV-9371 (KPF)(SN), 14-9764, 14-10067, 14-10102, 15-10033, 2017
  WL 953550 (S.D.N.Y. Mar. 10, 2017), *order clarified by* Nos. 14 Civ. 9371
  (KPF)(SN), 14-9764, 14-10067, 14-10102, 15-10033, 2017 WL 3610511
  (S.D.N.Y. Aug. 21, 2017) ...................................................................34

*Blackrock Balanced Capital Portfolio (FI) v. U.S. Bank N.A.*,
  86 N.Y.S.3d 484 (1st Dep't 2018) .....................................................27, 49

*Braun v. City of New York*,
  284 F. Supp. 3d 572 (S.D.N.Y. 2018)......................................................45

*CFIP Master Fund, Ltd. v. Citibank N.A.*,
  738 F. Supp. 2d 450 (S.D.N.Y. 2010).............................................43, 47, 48

*City of Amsterdam v. Daniel Goldreyer, Ltd.*,
  882 F. Supp. 1273 (E.D.N.Y. 1995) .......................................................44

*Delaney v. Bank of Am. Corp.*,
  908 F. Supp. 2d 498 (S.D.N.Y. 2012), *aff'd*, 766 F.3d 163 (2d Cir. 2014)...........20

*Dent v. U.S. Tennis Ass'n*,
  No. CV-08-1533 RJD VVP, 2008 WL 2483288 (E.D.N.Y. June 17, 2008) .........................19

*Deutsche Bank Nat'l Tr. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*,
  289 F. Supp. 3d 484 (S.D.N.Y. 2018) ...............................................................................21, 27

*Dresner Co. Profit Sharing Plan v. First Fid. Bank, N.A.*,
  No. 95 Civ 1924 (MBM), 1996 WL 694345 (S.D.N.Y. Dec. 4, 1996) ...........................37, 42

*El Paso County v. Bank of N.Y. Mellon*,
  No. A-12-CA-705-SS, 2013 WL 285705 (W.D. Tex. Jan 22, 2013), *aff'd sub
  nom. Welborn v. Bank of N.Y. Mellon Corp.*, 557 F. App'x 383 (5th Cir. 2014) ...................62

*Elliott Assocs. v. J. Henry Schroder Bank & Tr. Co.*,
  838 F.2d 66 (2d Cir. 1988) ...............................................................................................46, 61

*Ely-Cruikshank Co. v. Bank of Montreal*,
  81 N.Y.2d 399 (1993) ............................................................................................................55

*Enzo Biochem, Inc. v. Amersham PLC*,
  981 F. Supp. 2d 217 (S.D.N.Y. 2013).......................................................................24, 54, 60

*First Am. Title Ins. Co. of N.Y. v. Fiserv Fulfillment Servs., Inc.*,
  No. 06 CIV 7132 (NRB), 2008 WL 3833831 (S.D.N.Y. Aug. 14, 2008) .............................55

*Fixed Income Shares: Series M v. Citibank N.A.*,
  314 F. Supp. 3d 552 (S.D.N.Y. 2018) (Furman, J.), *appeal filed* ........................................3, 32

*Fixed Income Shares: Series M v. Citibank, N.A.*,
  69 N.Y.S.3d 288 (1st Dep't 2018) .................................................................................27, 49

*Flood v. Just Energy Mktg. Corp.*,
  904 F.3d 219 (2d Cir. 2018).............................................................................................45, 46

*FMS Bonds Inc. v. Bank of N.Y. Mellon*,
  No. 15 Civ. 9375 (ER), 2016 WL 4059155 (S.D.N.Y. July 28, 2016).......................33, 37, 42

*Galli v. Metz*,
  973 F.2d 145 (2d Cir. 1992)...................................................................................................48

*Giannullo v. City of New York*,
  322 F.3d 139 (2d Cir. 2003)......................................................................................15, 17, 20

*Hill v. City of New York*,
  45 F.3d 653 (2d Cir. 1995).....................................................................................................45

*In re Bankers Tr. Co.*,
  450 F.3d 121 (2d Cir. 2006)...................................................................................................49

*In re Blech Sec. Litig.*,
  No. 94 CIV. 7696 (RWS), 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003) .............................19

*In re Lipper Holdings, LLC*,
  1 A.D.3d 170 (1st Dep't 2003) ...................................................................................................23

*In re NXXI Inc.*,
  216 F. Supp. 3d 381 (S.D.N.Y. 2016) ........................................................................................54

*In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on
  Apr. 20, 2010*,
  MDL No. 2179, 2012 WL 85447 (E.D. La. Jan. 11, 2012) .......................................................17

*In re PCH Assocs.*,
  949 F.2d 585 (2d Cir. 1991) ......................................................................................................53

*In re Platinum & Palladium Commodities Litig.*,
  828 F. Supp. 2d 588 (S.D.N.Y. 2011) ........................................................................................19

*Klawonn v. YA Glob. Inves., L.P.*,
  No. 2:10-02108 (KM)(MAH), 2015 WL 457213 (D.N.J. Feb. 3, 2015) ...................................30

*Lewis v. Lee*,
  737 F. App'x 24 (2d Cir. 2018) ............................................................................................24, 60

*Lipsky v. Commonwealth United Corp.*,
  551 F.2d 887 (2d Cir. 1976) ......................................................................................................18

*LNC Invs., Inc. v. First Fid. Bank, N.A.*,
  No. 92 Civ 7584 MBM, 1997 WL 528283 (S.D.N.Y. Aug. 27, 1997) ...............32, 33, 37, 42

*Metro. Life Ins. Co. v. RJR Nabisco, Inc.*,
  906 F.2d 884 (2d Cir. 1990) ......................................................................................................30

*Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*,
  No. 14-cv-10104 (VEC), 2017 WL 3973951 (S.D.N.Y. Sept. 7, 2017)
  (Caproni, J.) .............................................................................................3, 33, 37, 38, 42

*Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*,
  172 F. Supp. 3d 700 (S.D.N.Y. 2016 ) ..................................................................10, 53, 54, 55

*Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., N.A.*,
  907 F. Supp. 2d 536 (S.D.N.Y. 2012) ........................................................................................34

*Royal Park Investments SA/NV v. Deutsche Bank National Trust Company*
  No. 14-CV-4394 (AJN), 2016 WL 439020 (S.D.N.Y. Feb. 3, 2016) .........................44, 45, 58

*Royal Park Invs. SA/NV v. HSBC Bank USA Nat'l Ass'n*,
  Nos. 14-CV-8175 (LGS)(SN), 14-9366, 14-10101, 15-2144, 15-10023, 15-
  10096, 2017 WL 945099 (S.D.N.Y. Mar. 10, 2017) ......................................21, 34

*Simon v. City of New York*,
  893 F.3d 83 (2d Cir. 2018)...........................................................................10

*Teachers Ins. & Annuity Ass'n of Am. v. Coaxial Commc'ns of Cent. Ohio, Inc.*,
  807 F. Supp. 1155 (S.D.N.Y. 1992)................................................................21

*Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*,
  103 F. Supp. 2d 711 (S.D.N.Y. 2000), *aff'd*, 294 F.3d 383 (2d Cir. 2002) ...........................56

*Topps Co. v. Cadbury Stani S.A.I.C.*,
  526 F.3d 63 (2d Cir. 2008).............................................................................29

*Torres v. Gristede's Operating Corp.*,
  628 F. Supp. 2d 447 (S.D.N.Y. 2008)........................................................16, 20

*United States v. Safavian*,
  435 F. Supp. 2d 36 (D.D.C. 2006) ...................................................................17

*V.S. v. Muhammad*,
  595 F.3d 426 (2d Cir. 2010)...........................................................................27

*W. & S. Life Ins. Co. v. Bank of N.Y. Mellon*,
  No. A1302490, 2017 WL 3392856 (Ohio C.P. Aug. 4, 2017) ...........................3, 34

*Wills v. RadioShack Corp.*,
  981 F. Supp. 2d 245 (S.D.N.Y. 2013)........................................................44, 45

## OTHER AUTHORITIES

17 C.F.R. § 229.1100 ........................................................................................4

17 C.F.R. § 229.1100(a)...................................................................................61

17 C.F.R. § 229.1102 ........................................................................................4

17 C.F.R. § 229.1103 ........................................................................................4

17 C.F.R. § 229.1104 ........................................................................................4

17 C.F.R. § 229.1105 ........................................................................................4

17 C.F.R. § 229.1106 ........................................................................................4

17 C.F.R. § 229.1107 ........................................................................................4

17 C.F.R. § 229.1108 ................................................................................................4

17 C.F.R. § 229.1109 ................................................................................................4

17 C.F.R. § 229.1110 ................................................................................................4

17 C.F.R. § 229.1111 ................................................................................................4

17 C.F.R. § 229.1112 ................................................................................................4

17 C.F.R. § 229.1113 ................................................................................................4

17 C.F.R. § 229.1114 ................................................................................................4

17 C.F.R. § 229.1115 ................................................................................................4

17 C.F.R. § 229.1116 ................................................................................................4

17 C.F.R. § 229.1117 ................................................................................................4

17 C.F.R. § 229.1118 ................................................................................................4

17 C.F.R. § 229.1119 ................................................................................................4

17 C.F.R. § 229.1120 ................................................................................................4

17 C.F.R. § 229.1121 ................................................................................................4

17 C.F.R. § 229.1122 ........................................................................................61, 62

17 C.F.R. § 229.1122(a) ..........................................................................................59

17 C.F.R. § 229.1122(d)(1) .....................................................................................59

17 C.F.R. § 229.1122(d)(1)(i) .................................................................................61

17 C.F.R. § 229.1123 ................................................................................................4

17 C.F.R. § 229.1124 ................................................................................................4

17 C.F.R. § 229.1125 ................................................................................................4

17 C.F.R. § 240.13a-18 ...........................................................................................26

17 C.F.R. § 240.15d-18 .....................................................................................26, 59

Fed. R. Evid. 408 ...................................................................................................19

Fed. R. Evid. 801 ...................................................................................................16

George Gleason Bogert et al., *The Law of Trusts & Trustees* § 1, Westlaw
   (database updated June 2018) ................................................................................46

Restatement (Third) of Trusts § 2 (2003) ........................................................................46

Deutsche Bank National Trust Company ("DBNTC") and Deutsche Bank Trust Company Americas ("DBTCA"), each as trustee (together in such trustee capacities, "Defendant") of residential mortgage-backed securitization ("RMBS") trusts at issue in the above-captioned actions (the "Trusts"), submit this memorandum of law in opposition to Plaintiffs' joint motion for partial summary judgment.[1]

## PRELIMINARY STATEMENT

Plaintiffs claim they are entitled to judgment that:  (i) Defendant was required but failed to declare Events of Default ("EODs") relating to alleged servicer breaches in maintaining real-estate owned ("REO") properties and sending compliance documents; (ii) Defendant breached post-EOD "prudent person" duties both for EODs it declared and EODs it supposedly should have declared, despite citing no evidence of what Defendant was supposedly required to have done differently;

---

[1] Plaintiffs in the *Phoenix Light* action ("PL Plaintiffs") and plaintiff in the *Commerzbank* action ("Commerzbank," and, together with PL Plaintiffs, "Plaintiffs"), which are all represented by the same counsel, filed one joint motion for summary judgment in the two above-captioned cases against Defendant. Plaintiffs' memorandum of law in support of their joint motion (*Phoenix Light* ECF No. 270; *Commerzbank* ECF No. 159) is cited as "Mtn. _;" Plaintiffs' Local Rule 56.1 statement (*Phoenix Light* ECF No. 271; *Commerzbank* ECF No. 160) is cited as "PSUF ¶ _;" and exhibits to the Declaration of Jay Handlin (*Phoenix Light* ECF No. 279; *Commerzbank* ECF No. 168) submitted in support of Plaintiffs' motion are cited as "Handlin Ex. _."

Unless otherwise indicated, exhibits cited herein are attached to the Declaration of Bryan P. Goff submitted herewith (cited as "Goff Ex. _").  Defendant's Local Rule 56.1 Counterstatement Statement filed herewith is cited as "DSUF ¶ _," and references to paragraphs include any subparts.  The pertinent contract provisions are set forth herein and/or the DSUF.  Unless otherwise indicated, any emphasis in quotations is added, and any internal quotation marks, citations, footnotes, brackets, and ellipses are omitted.

(iii) Defendant had a pre-EOD obligation to enforce breaches of representations and warranties based on the inclusion of the phrase "rights referred to above" in some governing agreements; (iv) Defendant had knowledge of missing and nonconforming documents in mortgage/collateral files, despite the Court already having ruled that the related claims were time-barred; and (v) Defendant had a duty to monitor servicers based on Reg AB and failed to do so, notwithstanding that Plaintiffs already dropped any Reg AB claims.

Plaintiffs' motion, like their claims, ignore the evidence elicited over the last four years. Plaintiffs ignore the work Defendant performed administering the Trusts, including providing notice of allegations of breaches of representations and warranties to deal parties, and, when directed, pursuing litigation on behalf of certificateholders. Plaintiffs ignore the actions Defendant took after EODs, including notifying certificateholders of the default and their rights, filing bankruptcy proofs of claim and participating in bankruptcy creditors' committees. And Plaintiffs ignore this Court's ruling that their document delivery claims are time-barred.

Plaintiffs also ignore their high burden to provide admissible, undisputed evidence that supports their motion. To support their purportedly "limited" arguments, Plaintiffs rely upon more than 1,000 statements they incorrectly claim are undisputed, and more than 800 exhibits, including inadmissible documents and misleading snippets of deposition testimony from Defendant's employees who Plaintiffs know were not tasked with performing the functions Plaintiffs discuss. The record evidence flatly contradicts many of Plaintiffs' factual assertions, and, at a minimum, raises disputed issues of fact that preclude granting Plaintiffs' motion. For example, in an effort to show that Defendant supposedly did not know of its post-EOD prudent person duties, Plaintiffs refer to the testimony of trust administrators, who were <u>not</u> responsible for addressing EODs. Plaintiffs <u>blatantly omit</u> the testimony of the employees who had that responsibility and who

undeniably knew of, and acted upon, those post-EOD duties.

Plaintiffs also ignore relevant case law, which, when examined, soundly defeats their motion because no court has ever granted the relief Plaintiffs seek.  In all four RMBS trustee cases where Plaintiffs' or other investor-plaintiffs' evidence has been tested, courts <u>entered judgment in favor of the trustees</u> on all, or nearly all, of plaintiffs' claims.[2]  Indeed, in the one prior instance when Plaintiffs filed a cross-motion for summary judgment, the motion was denied in its entirety.[3]  Plaintiffs, however, ask this Court to disregard all this authority and grant their motion for summary judgment.

This Court should deny Plaintiffs' motion for the following reasons:

<u>First</u>, Plaintiffs are not entitled to judgment that EODs resulted from alleged servicer breaches relating to REO properties.  Among other things: (i) Plaintiffs cite <u>no admissible evidence</u> in support of their argument; and (ii) the (hearsay) documents cited by Plaintiffs do not establish there were any EODs.

<u>Second</u>, Plaintiffs are not entitled to judgment that uncured EODs resulted from delayed

---

[2] *See Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, No. 14-cv-10104 (VEC), 2017 WL 3973951, at *8 (S.D.N.Y. Sept. 7, 2017) (Caproni, J.) ("*Phoenix v. BNYM*") (granting summary judgment for trustee on nearly all claims); *Am. Fid. Assurance Co. v. Bank of N.Y. Mellon*, No. Civ-11-1284-D, 2018 WL 6582381, at *6 (W.D. Okla. Oct. 31, 2018) (granting summary judgment for trustee on all claims); *Fixed Income Shares: Series M v. Citibank N.A.*, 314 F. Supp. 3d 552, 562 (S.D.N.Y. 2018) (Furman, J.) (granting summary judgment for trustee on all claims), *appeal filed*; *W. & S. Life Ins. Co. v. Bank of N.Y. Mellon*, No. A1302490, 2017 WL 3392856, at *1-2 (Ohio C.P. Aug. 4, 2017) (entering judgment for trustee on all claims after bench trial).  Plaintiffs do not mention, let alone distinguish, any of these cases.

[3] *Phoenix v. BNYM*, 2017 WL 3973951, at *21-22.

receipt of servicer compliance documents.  Among other things: (i) Plaintiffs have not pled a claim concerning late servicer compliance documents; (ii) the late compliance documents did not result in an EOD; and (iii) even if they did, any such EOD was promptly cured.

Third, Plaintiffs are not entitled to judgment that Defendant breached a prudent person duty arising from any EOD.  Among other things: (i) Plaintiffs cite no evidence—no customary industry practice, no expert opinions, not even contemporaneous complaints from Plaintiffs—indicating that Defendant's response to any EODs breached the prudent person standard; (ii) the evidence shows Defendant's response was prudent and consistent with industry practice; (iii) Plaintiffs do not (because they cannot) cite any case holding a securitization trustee breached a prudent person duty as a matter of law, and (iv) the case law holds that determining whether a trustee breached a prudent person duty presents an issue of fact inappropriate for resolution on summary judgment.

Fourth, Plaintiffs are not entitled to hypothetical, advance rulings on Defendant's supposed duties under certain governing agreements, because those contracts do not support Plaintiffs' reading and numerous open issues of fact preclude summary judgment.

Fifth, Plaintiffs' request for partial summary judgment on its purported document exception claims should be denied because (i) the Court already ruled those claims are time-barred; (ii) Plaintiffs expressly abandoned those claims; and (iii) in any event, numerous open issues of fact preclude summary judgment.

Sixth, Plaintiffs are not entitled to summary judgment that Defendant breached a non-existent duty arising from Reg AB,[4] because, among other things, (i) Plaintiffs withdrew any claim relating to Reg AB; and (ii) the Reg AB disclosure regime does not give rise to an obligation to monitor servicers.

---

[4] 17 C.F.R. §§ 229.1100-229.1125.

As a result of Plaintiffs' failure to meet their evidentiary burden, their failure to cite relevant case law, their failure to present additional evidence that they know contradicts many of their specious arguments, and their failure to acknowledge the rulings of this Court and other courts with respect to these issues, the Court should deny Plaintiffs' motion in its entirety.[5]

## STATEMENT OF FACTS

### A.    RMBS Transactions Generally

In an RMBS securitization, an entity that originated or acquired mortgage loans conveys them to a trust created to receive interest and principal payments from borrowers.  DSUF ¶ 1023. The right to receive trust income is parceled into certificates and sold to investors called certificateholders.  *Id.*  The entities that underwrite and make the mortgage loans are typically called "originators."  *Id.*  The entities that pool the mortgage loans are called "sellers" or "sponsors."  *Id.*  A "depositor" conveys the mortgage loans to an RMBS trust or trustee.  *Id.*  After the closing of the transaction creating the RMBS trust, "servicer(s)" enforce the loan terms and collect payments from borrowers.  *Id.*  The terms of the securitization trust as well as the rights and duties of the trustee, seller, depositor, originator(s), certificateholders and servicer(s) are set forth in the trust's governing agreements (the governing agreements for the Trusts are referred to herein as the "Governing Agreements" or "GAs").[6]  *Id.*

---

[5] The fact and legal issues that preclude judgment for Plaintiffs do not prevent the Court from granting Defendant's affirmative motions, which are based on undisputed facts and well-supported legal principles.

[6] The 85 Trusts at issue in these two cases were created using (i) a pooling and servicing agreement ("PSA") or similar agreement or (ii) an indenture.  DSUF ¶ 1024.  Certificates are issued by PSA trusts and notes are issued by indenture trusts.  For ease of reference, we refer to both as "certificates."  The PSAs,

B.    **Overview of the Governing Agreements**

1.    **Defendant's Limited Duties Under the Governing Agreements**

The GAs provide that unless Defendant has actual knowledge or, under some GAs, "written notice" that a contractually-defined EOD has occurred and is continuing, Defendant's duties are limited to those "specifically set forth in the Agreement with respect to the Trustee and no implied covenants or obligations shall be read into this Agreement."  DSUF ¶ 1026.  Defendant has only limited administrative and ministerial duties under the GAs.  DSUF ¶ 1027.  Importantly, Defendant has no duty under any GA to investigate any facts or matters absent direction and indemnity from a contractually specified percentage of investors.  DSUF ¶ 1028.

Defendant also has broad exculpations under the GAs.  DSUF ¶ 1029.  For example, the GAs generally provide that (i) "the Trustee shall not be liable with respect to any action taken, suffered, or omitted to be taken by it in good faith in accordance with the direction of the Holders of Certificates evidencing no less than [25%] of the Voting Rights of Certificates relating to the time, method, and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee under this Agreement;" and (ii) "the Trustee shall not be liable for any action taken, suffered or omitted by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Agreement."  *Id.*

a.    Defendant Did Not Make, and Is Not Responsible for, R&Ws
Concerning the Loans in the Trusts

RMBS sellers and/or loan originators made certain representations and warranties

_____

indentures and other relevant Governing Agreements for the Trusts are governed by New York law; except that the GAs for one Trust are governed by Delaware law.  DSUF ¶ 1025.

("R&Ws") concerning the characteristics of the loans to be conveyed to the Trusts (in such capacity, a "Warrantor").  DSUF ¶ 1030.  Defendant is entitled to rely on the R&Ws and has no obligation to investigate their accuracy or reliability.  DSUF ¶ 1031.  Defendant did not make any R&Ws concerning the loans.  DSUF ¶ 1032.  Under the GAs, if Defendant or another enumerated party "discovers" (*i.e.*, first obtains actual knowledge of) – or, under some GAs, receives written notice of – an actual, material loan-level R&W breach, it is required to notify other specified parties.  DSUF ¶ 1033.  Under certain circumstances, the Warrantor has a duty to substitute, cure or repurchase loans with material R&W breaches.  DSUF ¶ 1034.

### b.   Defendant's Post-EOD Duties

An EOD is an explicitly defined event that can trigger Defendant's duty to "act as a prudent person . . . under the circumstances."  DSUF ¶ 1035.[7]  Specifically, the GAs provide that if an EOD is continuing and Defendant has the contractually specified knowledge thereof (*e.g.*, "actual knowledge" or "written notice"), Defendant "shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs."  DSUF ¶ 1036.  Subject to the terms and conditions of the GAs, EODs may arise from events such as: (i) the servicer materially breaching its obligations under the GA and not curing the breach after notice, (ii) the servicer's ratings being downgraded by the rating agencies, (iii) the servicer

---

[7] Some GAs define different types of "events" (*e.g.*, "Master Servicer Event of Default" and "Servicer Event of Default") that have different consequences.  DSUF ¶ 1035.1.  For example, under many of those GAs, only a "Master Servicer Event of Default" or a "Servicer Event of Termination" can trigger Defendant's "prudent person" duty.  DSUF ¶ 1035.2.  As used herein, "EOD" only refers to those events defined under each GA that can trigger Defendant's "prudent person" duty.

filing for bankruptcy, or (iv) under a few GAs, losses or delinquencies on loans in the Trust exceeding a specified threshold.  DSUF ¶ 1037.

## 2. Servicers' Duties Under the Governing Agreements

Servicers—not Defendant—maintain the day-to-day relationships with the borrowers on loans in the Trusts.  DSUF ¶ 1038.  The servicers' duties include collecting payments on the loans, and, upon borrower default, enforcing the terms of the loan, which may include foreclosing on the real property securing the loan.  DSUF ¶ 1039.  In some transactions, a "master servicer" was appointed to monitor the performance of other servicers.[8]  DSUF ¶ 1040.  Defendant is entitled to rely on certifications and other information provided by the servicers.  DSUF ¶ 1041.  Defendant has no duty under any GA to supervise or monitor any servicer.  DSUF ¶ 1042.  Nor did Defendant have the servicing expertise to do so.  DSUF ¶ 1043.

## 3. Investors' Rights Under the Governing Agreements

The GAs provide that investors representing a specified percentage of "Voting Rights" (often 25%) have certain rights, such as the right, depending on the Trust, to: (i) notify a servicer that it has materially breached its contractual obligations and demand cure, (ii) terminate a servicer following an EOD, (iii) direct Defendant to appoint a new servicer, (iv) direct Defendant to conduct an investigation, (v) initiate legal actions under the GA if, upon request, Defendant fails to do so, and (vi) remove the trustee and appoint a replacement.  DSUF ¶ 1044.

## C. Plaintiffs and Their Claims

These two cases involve 85 Trusts.  Eight of the 85 Trusts are at issue in both cases.  The remaining 77 Trusts are at issue in only one case.  DSUF ¶ 1045.

PL Plaintiffs:  PL Plaintiffs assert claims against Defendant purportedly arising from

---

[8] Except as expressly stated herein, the term "servicers" includes both servicers and master servicers.

"hundreds of millions of dollars" in alleged losses on 87 interests (the "PL Certificates") in 43 Trusts. *Phoenix Light* ECF No. 189 ¶¶ 1, 15, Ex. B. Each PL Plaintiff is a so-called "special purpose entity" with no employees, formed to facilitate a securitization transaction structured by failed German bank WestLB AG. DSUF ¶ 1046. PL Plaintiffs hold none of the PL Certificates and are asserting claims in this action allegedly assigned to them by the indenture trustees for the WestLB securitizations. DSUF ¶ 1047. The PL Certificates and other assets in the securitized asset portfolios are managed by sophisticated investment advisors. DSUF ¶ 1048.

In May 2012, several PL Plaintiffs sought to recover RMBS losses by suing RMBS sellers, depositors, and underwriters, including for Trusts at issue here. DSUF ¶ 1049. ███████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████ DSUF ¶ 1050.

Commerzbank: Commerzbank asserts claims against Defendant purportedly arising from "hundreds of millions of dollars" in alleged losses on 74 interests in 50 Trusts. *Commerzbank* ECF No. 89 ¶¶ 1, 15, Ex. B. In December 2013, Commerzbank sought to recover its RMBS losses by suing RMBS sellers, depositors, and underwriters, including for Trusts at issue here. DSUF ¶ 1051.[9] After that lawsuit was dismissed as untimely, Commerzbank began asserting that RMBS trustees, including Defendant, were actually the ones responsible for RMBS losses. DSUF ¶ 1052.

As detailed in Defendant's 56.1 Counterstatement and its argument below, most of the

---

[9] Oddly, Plaintiffs assert that "Certificateholders are not permitted to sue Sellers directly; the Governing Agreements require Certificateholders to rely on the Trustee to vindicate their rights." Mtn. at 8. But Plaintiffs sued Sellers directly in at least 10 different lawsuits. DSUF ¶ 1053.

factual assertions underlying Plaintiffs' motion are incorrect and disputed.[10]

## LEGAL STANDARD

"Summary judgment is appropriate if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Simon v. City of New York*, 893 F.3d 83, 91-92 (2d Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015). Finally, to prevail on claims against an RMBS trustee like those asserted here, a plaintiff must prove the trustee's alleged misconduct "loan-by-loan and trust-by-trust." *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 172 F. Supp. 3d 700, 713 (S.D.N.Y. 2016) ("*Phoenix v. DB*").

## ARGUMENT

### I.  CONTRARY TO PLAINTIFFS' ASSERTION, DEFENDANT'S POST-EOD PRUDENT PERSON DUTY WAS NOT TRIGGERED IN 73 OF THE 85 TRUSTS

Defendant declared EODs (i) in the 18 Trusts on Goff. Ex. 30 because a loss or delinquency trigger was met (the "Numerical Threshold EODs")[11] and (ii) in the 7 Trusts on Goff Ex. 31 because the rating agencies downgraded the ratings of a servicer for those Trusts (the "Downgrade EODs" and, together with the Numerical Threshold EODs, the "Declared EODs"). *See* Mtn. at 15-18. But, as demonstrated below in Section II, Plaintiffs' contention that Defendant breached its prudent person duty arising from the Declared EODs is baseless.

---

[10] Defendant has separately submitted its evidentiary objections to various materials cited by Plaintiffs.

[11] Defendant declared those EODs on the dates set forth on Goff Exs. 30 and 31. For 11 of those 18 Trusts, Plaintiffs claim that Defendant's notice was untimely. Mtn. at 17. But there is a disputed issue of fact as to when Defendant gained the knowledge necessary to trigger its notice obligations. DSUF ¶ 1026.

In addition to the Declared EODs, Plaintiffs contend Defendant should have declared 81 other EODs.[12]  Specifically, Plaintiffs assert that Defendant's post-EOD prudent person duty was triggered by: (i) purported EODs in 73 Trusts arising from alleged servicer "misconduct relating to REO properties and foreclosures," and (ii) purported EODs in eight Trusts arising from a servicer's alleged "untimely deliver[y] of compliance documents." *Id.* 18-32.  Plaintiffs are wrong.

**A.      Purported Servicing Breaches Relating to REO Properties Did Not Trigger Defendant's Post-EOD Duties in 73 Trusts**

        **1.      Background**

When a borrower defaults on a mortgage loan in an RMBS trust, the servicer may commence a foreclosure action that eventually leads to sale of the property.  DSUF ¶ 1056.  At the foreclosure auction, the property may be acquired by the servicer, typically in the name of the RMBS trustee, solely in its trustee capacity, for the benefit of the certificateholders.  DSUF ¶ 1057.  If that occurs, the property, at that point referred to as a real estate owned (REO) property, is held in the Trust until it is sold to a third party.  DSUF ¶ 1058.  Under the GAs (and RMBS governing agreements generally), servicers are responsible for the REO properties held by the Trusts.  DSUF ¶ 1059.

During the relevant time-period, DBNTC and DBTCA were trustees for over 2,000 RMBS trusts, each of which typically held thousands of assets (*i.e.*, mortgage loans and REO properties). DSUF ¶ 1060.  The unprecedented financial crisis that started in 2007 resulted in Defendant, and other RMBS trustees, holding legal title to a significant number of REO properties across the United States, which also resulted in increased contact with the municipalities where those properties were located.  DSUF ¶ 1061.

---

[12] Plaintiffs contend that more than one EOD occurred in some Trusts.

Certain municipalities have requirements with respect to property maintenance and can issue fines if a property code is violated (*e.g.*, dirty sidewalk, failing to separate recyclables). DSUF ¶ 1062.  Certain municipalities also issue bills for services (*e.g.*, water, fire department) and property tax bills.  DSUF ¶ 1063.  In the event of an alleged code violation or unpaid bill related to an REO property held by the Trusts, municipalities sometimes contacted Defendant because it was the title holder of record.  DSUF ¶ 1064.  When that occurred, Defendant forwarded the information from the municipalities to the relevant servicers so the matter could be resolved (*e.g.*, bill/fine challenged or paid).  DSUF ¶ 1065.  On occasion, servicers informed Defendant that they did not agree with the municipalities and that the Trusts were not responsible for the unpaid bill or alleged property code violations.  DSUF ¶ 1066.  Defendant did not, and was under no obligation to, investigate whether the bills and alleged property code violations were valid and/or the responsibility of the Trusts (since that was the servicers' job) or how those issues were ultimately resolved between the municipality and the servicers.  DSUF ¶ 1067.

Defendant also sent several memoranda to servicers concerning communications from the municipalities, REO property maintenance, and other servicing matters.  DSUF ¶ 1068.  In those memoranda (some of which are cited by Plaintiffs), Defendant, among other things, reminded the servicers of their obligations relating to REO properties and encouraged them to work with the municipalities to resolve any issues.  DSUF ¶ 1069.

Defendant also notified investors of various servicing matters relating to the financial crisis, including some concerning the maintenance of REO properties generally, and reminded investors that in accordance with the GAs, they could direct Defendant to investigate or take other action relating to the servicing of loans and REO properties.  DSUF ¶ 1070.  None did.  *Id.*

For example, on October 25, 2010, Defendant sent a notice to investors in all RMBS trusts

that it administered (including the Trusts) (i) notifying them of media reports [13] and communications regarding certain servicing matters and (ii) attaching certain related memoranda that Defendant had sent to servicers, including regarding REO property maintenance.  DSUF ¶ 1070.1.  The October 25, 2010 notice expressly reminded investors that if they wanted Defendant to take additional action concerning the servicing matters, they could direct Defendant to do so in accordance with the GAs.  DSUF ¶ 1070.2.  Plaintiffs have no evidence that they or any of the other sophisticated investors in the Trusts ever gave such a direction.  Nor did Defendant receive any such direction in 2013 after it notified investors that it and the servicers had reached a settlement with the City of Los Angeles regarding alleged code violations relating to certain REO properties.  DSUF ¶ 1071.   Indeed, Plaintiffs cite no evidence that they or any other investors ever informed Defendant that they believed Defendant was required to declare an EOD based on any alleged REO property issues.

> **2.**      **To Prevail, Plaintiffs Must Prove, With Respect to Each of the 73 Trusts, That the Relevant Servicer Materially Breached Its Contractual Duties and Failed to Cure After Knowledge/Notice**

Against this backdrop, Plaintiffs seek summary judgment that (i) the loan servicers for 73 of the 85 Trusts materially breached their contractual duties by purportedly failing to maintain REO properties in Chicago, New York, Milwaukee and Los Angeles in accordance with applicable law, resulting in EODs; (ii) those supposed EODs were allegedly not cured and triggered Defendant's duty to act as a prudent person; and (iii) in 46 of the 73 Trusts, Defendant breached its supposed "prudent person" duty.  Mtn. at 24-41.  Plaintiffs' arguments are unfounded.

Insofar as relevant to Plaintiffs' motion, the GAs for the 73 Trusts generally define an EOD

---

[13] There were numerous news articles concerning how, in the wake of the financial crisis, municipalities were dealing with unoccupied REO properties.  DSUF ¶ 1072.

as:  (i) a <u>material breach</u> by a contractually specified servicer of its contractual duties;[14] (ii) written notice requesting that the material breach be cured or, under some GAs, a contractually defined "Servicing Officer" of the servicer acquires actual knowledge of the material breach; and (iii) the material breach is not cured within a contractually specified number of days after such notice or knowledge.  DSUF ¶ 1073.  The GAs for the 73 Trusts further provide that Defendant's post-EOD duty to act as a prudent person arises, depending on the Trust, <u>only if</u> a "Responsible Officer" of Defendant has "actual knowledge" that the EOD occurred and/or if Defendant receives "written notice" thereof.  DSUF ¶ 1075.  The prudent person duty arising from an EOD ends if and when the EOD is cured.  DSUF ¶ 1104.

Thus, to obtain summary judgment that Defendants' post-EOD duties were triggered and remained in effect, Plaintiffs must, at a minimum, come forward with admissible, Trust-specific evidence establishing there is no genuine dispute as to the following material facts:

- a servicer failed to maintain REO properties held by the Trust in accordance with applicable law;

- that failure was a <u>material breach</u> of the contractually specified servicer's duties under the relevant GA;

- the contractually specified servicer received written notice requesting that the material breach of the GA be cured or, depending on the Trust, a "Servicing Officer" acquired actual knowledge of the material breach;

- the contractually specified servicer failed to cure the material breach within the contractually specified number of days (*e.g.*, 60 days) after such notice or

---

[14] For example, many GAs specify that the material breach must be on the part of the master servicer, not the servicer, to trigger an EOD.  DSUF ¶ 1074.

knowledge, resulting in an EOD;

- depending on the Trust, a "Responsible Officer" of Defendant had "actual knowledge" that each of the foregoing conditions occurred and/or Defendant received "written notice" thereof; and

- the EOD was not cured.

Plaintiffs have not proved any of these six material facts necessary to show Defendant's post-EOD duties were triggered.

### 3. Plaintiffs Cite No Admissible Evidence in Support of Their Argument

The law squarely holds that "where the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied." *Giannullo v. City of New York*, 322 F.3d 139, 140-41 (2d Cir. 2003) (vacating summary judgment). Here, Plaintiffs' cite no admissible evidence in support of their contention that EODs occurred because servicers supposedly failed to adequately maintain REO properties in Chicago, New York, Milwaukee and Los Angeles, and did not cure alleged property code violations once notified of them. *See* Mtn. at 24-32.

Although Plaintiffs contend the servicers breached their duties by not adequately maintaining REO properties, Plaintiffs cite no testimony, written discovery, or documents produced by any servicer or municipality.[15] Rather, as shown below, Plaintiffs attempt to support their REO property arguments with hearsay and other speculative and inadmissible evidence.

---

[15] Plaintiffs did not depose or seek written discovery from any servicer, and sought no discovery whatsoever from any municipality.

a.    Hearsay spreadsheets from Chicago, New York and Milwaukee

With respect to REO properties in Chicago, New York and Milwaukee, Plaintiffs attempt to prove that there were REO properties with uncured property code violations by citing, without any evidentiary foundation, spreadsheets prepared by municipalities that were, in some cases, forwarded by Defendant to the servicers.  *See id.* at 24-29; Handlin Exs. 785-788, 791-802, 806-808.[16]  All statements in those spreadsheets regarding alleged property code violations and/or outstanding fines/bills are inadmissible hearsay because they are out-of-court statements made by a non-party and Plaintiffs are offering those statements to prove the truth of the matter asserted (*i.e.*, that there was an uncured code violation and/or an outstanding fine/bill).  DSUF ¶ 1076; *e.g.*, Handlin Exs. 793 ████████████████████████████████████████████████████ ████████ ; 807 ████████████████████████████████████████████████ ; *see e.g.,* Fed. R. Evid. 801; *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 469–70 (S.D.N.Y. 2008) (hearsay evidence may not be considered on a motion for summary judgment).[17]

---

[16] Defendant added columns to certain of those spreadsheet to include things like servicer responses and Defendant's internal trust identification codes.  DSUF ¶ 1076.2.  Also, Plaintiffs did not file the spreadsheets that were attached to emails cited by Plaintiffs pertaining to New York (Handlin Exs. 791-802).  Those spreadsheets, with the relevant cover emails, are submitted herewith as Goff Exs. 93-104.

[17] The cover emails from Defendant show that Defendant was <u>not</u> adopting the content of the municipalities' spreadsheets and did <u>not</u> believe in the truth of their contents. DSUF ¶ 1076.4; *see*, *e.g.*, Handlin Exs. 791 ("█████████████████████████████████████████████████████ █████████████████████████████████████████████████ "), 787 ("[█ █████████████████████████████████████████████████████████ ████████ "). Thus, the municipalities' hearsay statements are <u>not</u> admissible as adoptive admissions.  *See*

-16-

Defendant had no personal knowledge regarding the truth or accuracy of the municipalities' assertions, and servicers periodically informed Defendant that those assertions were incorrect. DSUF ¶ 1067.

Moreover—even if the hearsay documents cited by Plaintiffs were admissible—they do not prove that servicers failed to adequately maintain REO properties or cure alleged property code violations.  Plaintiffs assert that if a property, which may or may not be in a Trust, is listed on both an earlier and later (hearsay) spreadsheet from the municipality, that means the servicer of a Trust failed to cure a material breach of its contractual obligations under the relevant GA and an EOD occurred.  Mtn. at 24-29.  Those (hearsay) spreadsheets prove no such thing.

**Chicago:** Plaintiffs cite four (hearsay) spreadsheets from the City of Chicago that were forwarded by Defendant and claim that these spreadsheets show that two servicers had uncured "violations" in 4 Trusts.  DSUF ¶ 1077.  ████████████████████████

████████████████████████████████████████████████████████

████████ *Id.*  An unpaid bill is not probative of whether a servicer adequately maintained a property.

**New York:** ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████  DSUF ¶ 1078.  But—even if true—the fact that a fine associated with a violation went unpaid is not evidence that the underlying violation itself persisted.  The New York spreadsheets cited by Plaintiffs contain no information concerning (i) whether the servicer was responsible for the alleged condition cited in the violation (*e.g.*, dirty

---

*In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on Apr. 20, 2010*, MDL No. 2179, 2012 WL 85447, at *4 (E.D. La. Jan. 11, 2012); *see also United States v. Safavian*, 435 F. Supp. 2d 36, 43-44 (D.D.C. 2006).

sidewalk); (ii) whether the alleged condition cited in the violation was cured (*e.g.*, sidewalk cleaned); or (iii) the reason why a particular fine may not have been paid (*e.g.*, if the REO property had been sold or the servicer was challenging the fine).[18]  DSUF ¶ 1079.

**Milwaukee:** 

DSUF ¶ 1081.

        b.    <u>Inadmissible complaint and settlement agreement with Los Angeles</u>

Plaintiffs attempt to prove there were REO properties in Los Angeles with uncured property code violations in 73 Trusts by citing to (i) a complaint filed by the City of Los Angeles against DBNTC and DBTCA, in their trustee capacities, regarding Los Angeles REO properties held by RMBS trusts (Handlin Ex. 809), and (ii) the related settlement agreements and consent judgment (wherein DBNTC, DBTCA and the servicers expressly did <u>not</u> admit any liability or wrongdoing) resolving that lawsuit (Handlin Exs. 810-812).[19]   All of these documents are inadmissible to prove that there were any uncured property code violations.  *See Lipsky v.*

---



[18] 

*See* Mtn. at 27-28.  These claims are irrelevant because the amounts referenced therein have no relationship to any alleged code violations in any Trust at issue here. In any event, the documents cited by Plaintiffs do not even support their irrelevant assertion.  DSUF ¶ 1080.

[19] After Defendant provided investors with notice of the settlement and an opportunity to object, Defendant obtained court approval of that settlement.  DSUF ¶¶ 1071, 1144.

*Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (holding that allegations in a complaint and resulting consent judgment were properly stricken because they were not adjudicated on the merits, and thus could not be used as evidence of prior wrongdoing in subsequent litigation, or to prove underlying facts of liability); *In re Blech Sec. Litig.*, No. 94 CIV. 7696 (RWS), 2003 WL 1610775, at *11 (S.D.N.Y. Mar. 26, 2003) (statements in complaints are "inadmissible hearsay, excluded by Rules 801, 802, and 803 of the Federal Rules of Evidence"); *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 594 (S.D.N.Y. 2011) (granting motion to strike references to consent order entered pursuant to settlement agreement); *Dent v. U.S. Tennis Ass'n*, No. CV-08-1533 (RJD) (VVP), 2008 WL 2483288, at *2 (E.D.N.Y. June 17, 2008) (granting motion to strike references to settlement agreement with New York attorney general); *see also* Fed. R. Evid. 408.

Plaintiffs try to get around this evidentiary issue by pointing to the following testimony from DBNTC executive, David Co:



Handlin Ex. 384 154:1-9.  But, as confirmed in Mr. Co's declaration submitted herewith, Mr. Co only was aware of the allegations made by the City of Los Angeles.  DSUF ¶ 1082.1.  He was not aware of, and has no personal knowledge concerning, whether the wrongdoing that the City of Los Angeles was complaining about had occurred.  *Id.*[20]  The servicers denied the wrongdoing alleged

---

[20] Nor does Mr. Co have any personal knowledge concerning whether property code violations alleged by other municipalities actually occurred.  DSUF ¶ 1082.2.

by the City of Los Angeles.  DSUF ¶ 1082.3.[21]

Accordingly, as Plaintiffs have <u>not</u> come forward with any admissible evidence showing that servicers did not adequately maintain REO properties, their bid for summary judgment on this issue should be denied.  *See*, *e.g.*, *Giannullo*, 322 F.3d at 144; *Torres*, 628 F. Supp. 2d at 469-70 ("Evidence submitted in support of a summary judgment motion must be admissible at trial, and the proponent of the evidence bears the burden of showing that the evidence is admissible.") (citing *Patterson v. County. of Oneida*, 375 F.3d 206, 219-20, 222 (2d Cir. 2004)).

### 4.   Even if Plaintiffs Had Proof of Uncured Property Code Violations, Open Issues of Fact Would Still Preclude Summary Judgment

For 19 of the 73 Trusts, only a material breach by the "master servicer" for the Trust can result in an EOD, and the duty to maintain the REO properties resides with the primary servicers—<u>not</u> the master servicer.  DSUF ¶ 1083.  With respect to these 19 Trusts, even if Plaintiffs had admissible evidence of a "dirty sidewalk" code violation on an REO property in the Trust, that would not prove that the master servicer breached its duties.  Moreover, Plaintiffs would need to prove that the uncured property code violation related to an REO property that was in the Trust. Servicers periodically informed Defendant that alleged code violations related to properties that were no longer, or were never, in the Trusts (*e.g.*, the REO property had been sold before the

---

[21] ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████   Mtn. at 24-25, 29; *see*, *e.g.*, Handlin Exs. 563, 568.  A (hearsay) complaint or allegation is not proof of servicer misconduct.  *See Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498, 505 (S.D.N.Y. 2012), *aff'd*, 766 F.3d 163 (2d Cir. 2014).

violation). DSUF ¶ 1085. Plaintiffs offer no such proof. At the very least, there are numerous, significant and unresolved open issues of material fact making summary judgment inappropriate.

### 5. Materiality Is a Question of Fact

To establish an EOD occurred based on a breach of a servicer's contractual duties, Plaintiffs must prove the supposed breach was "material." The law is well settled that the materiality of a breach generally cannot be resolved on summary judgment and is a question to be resolved be the trier of fact. *E.g., Deutsche Bank Nat'l Tr. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 289 F. Supp. 3d 484, 513 (S.D.N.Y. 2018) ("It is clear to this Court that the materiality of any particular breach is a question of fact under New York law") (citing *Orlander v. Staples*, *Inc.*, 802 F.3d 289, 298 (2d Cir. 2015)); *Bear, Stearns Funding, Inc. v. Interface Grp. - Nev., Inc*., 361 F. Supp. 2d 283, 295-97 (S.D.N.Y. 2005) (collecting cases); *Teachers Ins. & Annuity Ass'n of Am. v. Coaxial Communic'ns of Cent. Ohio, Inc.*, 807 F. Supp. 1155, 1160 (S.D.N.Y. 1992) ("[I]t is for the jury to determine materiality with respect to any alleged breach.").[22] Here, even if the documents cited by Plaintiffs were admissible and showed an uncured servicing breach (neither of which is true), they would not come close to proving a material breach.

---

[22] Plaintiffs cite to *Royal Park Investments SA/NV v. HSBC Bank USA National Ass'n*, Nos. 14-CV-8175 (LGS)(SN), 14-9366, 14-10101, 15-2144, 15-10023, 15-10096, 2017 WL 945099, at *8 (S.D.N.Y. Mar. 10, 2017), as purported support for the proposition that "[b]ecause [Defendant] admits that failing to comply with law in connection with REO properties and foreclosures breaches the Governing Agreements, the Servicers necessarily failed duly to observe or perform any of their covenants or agreements in a 'material respect.'" Mtn. at 32. Putting aside the factual inaccuracy of that statement, nothing in the *Royal Park* decision supports it.

████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████

During the time-period when the municipalities prepared these spreadsheets, each of the foregoing Trusts contained <u>thousands of mortgage loans and REO properties</u> and had <u>hundreds of millions of dollars, and in some cases over a billion dollars, in outstanding certificates</u>.  DSUF ¶ 1090.   Even if the Court were to conclude that a violation (such as an unkempt sidewalk) persisted for a few properties in a given Trust, Plaintiffs offer no evidence or explanation as to why that would constitute a <u>material</u> breach of contract as a matter of law.

At the end of the day, Plaintiffs are asking the Court to find that the information in (inadmissible) documents conclusively proves that EODs occurred in 73 Trusts triggering Defendant's prudent person duty, which—according to Plaintiffs—apparently meant Defendant should have commenced expensive investigations into whether any of the over hundred thousand loans in those Trusts had "a basis for repurchase."  Mtn. at 5, 24-41.  The following examples demonstrate the absurdity of Plaintiffs' position.

- <u>MSAC 2006-HE7</u>.   ████████████████████████

    ████████████████████████████████████████



- SVHE 2006-OPT5. ▇▇▇▇▇▇▇▇▇▇▇▇

- ARSI 2006-M3. ▇▇▇▇▇▇▇▇▇▇▇▇

DSUF ¶¶ 1091-93; Mtn. at 24-32. Plaintiffs are claiming that these and other occasional unpaid bills and fines gave rise to EODs and inexplicably made it incumbent on Defendant to re-underwrite tens of thousands of loans in search of "a basis for repurchase." Mtn. at 4-5. Plaintiffs' contentions are meritless and, not surprisingly, they cite no evidence that when faced with similar circumstances, any trustee ever declared an EOD or any court held an EOD occurred. This Court should deny Plaintiffs' request for summary judgment that EODs occurred in 73 Trusts because servicers allegedly did not adequately maintain REO properties in those Trusts or cure alleged property code violations. *See*, *e.g.*, *In re Lipper Holdings, LLC*, 1 A.D.3d 170, 171 (1st Dep't 2003) ("A contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties.").

### B.   Alleged Late Servicer Compliance Documents Did Not Trigger Defendant's Post-EOD Duties in Eight Trusts

The GAs required servicers to deliver an annual statement of compliance ("ASOC") and an annual independent public accountant's attestation of the servicer's compliance ("IAR"). DSUF ¶ 1094. Plaintiffs claim that they are entitled to summary judgment that (i) a servicer for the eight Trusts on Goff Ex. 24 delivered one ASOC late; (ii) the late delivery constituted an EOD in each of those Trusts and triggered Defendant's post-EOD duties; (iii) those alleged EODs were never cured; and (iv) in five of the eight Trusts, Defendant breached its post-EOD "prudent person" duty. Mtn. at 18-24, 32-41. Plaintiffs are mistaken.

### 1.   Plaintiffs Cannot Obtain Summary Judgment Because This Claim Is Not Pled

Plaintiffs have not asserted any claims relating to late ASOCs. None of the seven complaints Plaintiffs filed in these actions even mention late ASOCs, let alone allege that Defendant breached any duty relating thereto. DSUF ¶ 1095. "It is well settled that a party may not amend its pleadings in its briefing papers." *Enzo Biochem, Inc. v. Amersham PLC*, 981 F. Supp. 2d 217, 223 (S.D.N.Y. 2013) (citing *Avillan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012)); *see also Lewis v. Lee*, 737 F. App'x 24, 29 (2d Cir. 2018) ("A party is not entitled to amend his complaint on summary judgment.") (citing *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006)). Thus, the Court should deny Plaintiffs' motion as it relates to late ASOCs.

### 2.   Plaintiffs Have Not Proved an EOD Occurred in FHLT 2006-1 Because Plaintiffs Mistake the Identity of the Servicer

With respect to FHLT 2006-1, Plaintiffs contend that (i) █████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ and (ii) that supposed breach resulted in a "Servicer Event of Termination" under section 3.22 of that

GA.  Mtn. at 20-21. ██████████████████████████████



██████████████ DSUF ¶ 1096. ████████████████████████

███████████████████████ DSUF ¶ 1097. ██████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████

### 3.    Plaintiffs Have Not Proved an EOD Occurred in the Other Seven Trusts

With respect to each of the other seven Trusts, Plaintiffs contend that (i) the servicer's failure to deliver one ASOC to Defendant by the contractually specified deadline breached section 3.22 of the GA for that Trust (except, in the SVHE 2006-1 GA, the relevant section is 3.20) and (ii) regardless of whether that breach was "material," an EOD occurred because the servicer failed to remedy its breach within the specified cure period.  Mtn. at 18-20.  An EOD relating to a servicer breach of the GAs has three elements: (i) a "<u>material</u>" breach by a contractually specified servicer of its contractual duties; (ii) written notice requesting that the material breach be cured or a contractually defined "Servicing Officer" of the servicer acquires actual knowledge of the material breach; and (iii) the material breach is not remedied within a contractually specified number of days after such notice or knowledge.  DSUF ¶ 1098.  Plaintiffs have not proved these conditions were satisfied in any of the seven Trusts.

> a.    <u>Plaintiffs have not proved that the servicers' failure to timely deliver the ASOC was a material breach</u>

Plaintiffs quote the following language from the GA for one of the seven Trusts, which defines an EOD to include:

> **any failure on the part of a Servicer duly to observe or perform in any <u>material</u> respect any other of the covenants or agreements** on  the  part  of  the  Servicer  set  forth  in  this  Agreement  which

> **continues unremedied for a period of sixty (60) days <u>(except that
> . . . such number of days shall be ten in the case of a failure to
> observe or perform any of the obligations set forth in Sections
> 3.22, 3.23 or 8.12)</u>** after the earlier of (i) the date on which written
> notice of such failure, requiring the same to be remedied, shall have
> been given to such Servicer by the Depositor or by the Trustee, or
> to such Servicer, the Depositor and the Trustee by Certificateholders
> entitled to at least 25% of the Voting Rights in the Certificates and
> (ii) actual knowledge of such failure by a Servicing officer of such
> Servicer.

DSUF ¶ 1099; Handlin Ex. 107 (MSAC 2005-HE-7 PSA § 7.01(b)).  Plaintiffs' incorrectly assert that the "[s]ix other Trusts contain substantially similar language," and that the underlined parenthetical somehow eliminates the materiality requirement set forth in the second line of the quoted language.  Mtn. at 19-20.

As an initial matter, the GA for one of the Trusts, SVHE 2006-1, does <u>not</u> contain substantially similar language—section 7.01(b) in that GA does not contain the underlined parenthetical or any similar language.  DSUF ¶ 1099.1.  And, with respect to the Trusts that have language similar to the quoted provision, the underlined parenthetical does not eliminate the materiality requirement.  Rather, it only modifies the number of days that the servicer has after notice/knowledge to remedy a material breach before an EOD occurs.  Thus, the failure to deliver an ASOC must constitute a material breach to give rise to an EOD in the seven Trusts.  Plaintiffs have not argued, let alone proved, that the servicers' failure to deliver the ASOC on time was material.  And there are at least genuine disputes of material fact as to whether that was the case.

The purpose of the requirement that servicers deliver an ASOC and IAR to Defendant is to facilitate the Trust's compliance with securities laws.  DSUF ¶ 1100.  In particular, applicable securities laws required that the ASOC and IAR be attached to any Form 10-K filed by the Trusts.  *See* 17 C.F.R. § 240.13a-18, 17 C.F.R. § 240.15d-18.  However, each of the seven Trusts filed a Form 15 Suspension Notification with the Securities and Exchange Commission that suspended

the Trust's reporting obligations under the Exchange Act, including the obligation to file a Form 10-K. DSUF ¶ 1101. For each of the seven Trusts, the servicer's failure to deliver an ASOC on time occurred <u>after</u> the Trusts' obligation to make any Exchange Act filings had been suspended. DSUF ¶¶ 1102-03.

Plaintiffs offer no evidence as to why a servicer's delivery of a late ASOC is material if the late delivery has no effect on the Trust's ability to make any SEC filing. Nor do Plaintiffs point to any evidence that any RMBS trustee has declared an EOD in these circumstances. Thus, at the very least, there are issues of material fact that preclude summary judgment. *See, e.g*, *Deutsche Bank Nat'l Tr. Co.*, 289 F. Supp. 3d at 513 (citing *Orlander*, 802 F.3d at 298); *Bear, Stearns Funding, Inc.*, 361 F. Supp. 2d at 295-97.

b.   <u>Plaintiffs have not proved that the servicers did not remedy their alleged breach within the applicable cure period</u>

Plaintiffs cite no evidence that the servicers of the seven Trusts received written notice of a late ASOC that started the clock on the period to cure before an EOD occurred or that the cure period expired (*e.g.*, 10 days passed) between when the servicers realized they had not sent an ASOC and when they sent it. *See* Mtn. at 18-24. And Plaintiffs cannot rely on the "prevention doctrine" to excuse their failure of proof because Defendant had no duty to give that notice and did not actively hinder notice. *See Fixed Income Shares: Series M v. Citibank, N.A.*, 69 N.Y.S.3d 288, 290 (1st Dep't 2018) (holding that the prevention doctrine only applies where "the party's active conduct . . . prevent[ed] or hinder[ed] the fulfillment of the condition" and "[the trustee's] failure to send a notice to cure to the servicers is not active conduct."); *Blackrock Balanced Capital Portfolio (FI) v. U.S. Bank N.A.*, 86 N.Y.S.3d 484, 485-86 (1st Dep't 2018) (same); *see also V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010) (federal courts are "bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the

state's highest court would reach a different conclusion."); DSUF ¶ 1099.3.  Thus, Plaintiffs are <u>not</u> entitled to summary judgment that an EOD occurred due to a late ASOC in any of these Trusts.

Moreover, even if Plaintiffs had evidence that the cure period started to run as soon as the deadline for delivering the ASOC passed, Plaintiffs' motion would still fail with respect to five of the seven Trusts because even under that generous hypothetical, the evidence shows that the servicer delivered the ASOC within the cure period.

<u>SVHE 2006-1</u>:  Under the PSA for SVHE 2006-1, only a contractually defined "Servicer Event of Termination" can trigger Defendant's post-EOD "prudent person" duties.   DSUF ¶ 1103.1.  ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████   Mtn. at 22.  Plaintiffs' argument fails because a "Servicer Event of Termination" cannot occur unless the servicer has failed to remedy a material breach "for a period of <u>30 days</u>" after notice or actual knowledge thereof.  *Id.* ████████████████████████████████

████████████████████████████████████████████████[23]

<u>GSAMP 2005-WMC1, GSAMP 2005-WMC2 and GSAMP 2005-WMC3</u>:  The GA for

---

[23] Section 3.20 of the SVHE 2006-1 PSA provides that a servicer's failure to deliver an ASOC within 10 days of the March 15 deadline constitutes an "event of default," which under this PSA is <u>different from a</u> "<u>Servicer Event of Termination</u>" and importantly <u>cannot</u> trigger Defendant's prudent person duties.  DSUF ¶ 1103.1.3.  The PSA provides that if this event occurs, Defendant "<u>may</u> . . . terminate all the rights and obligations of the Servicer under this Agreement."  DSUF ¶ 1103.1.4.  ████████████████████████████

████████████████████████  DSUF ¶ 1103.1.5.  The PSA is clear that "the right of the Trustee to perform any discretionary act enumerated in this Agreement shall not be construed as a duty . . . ."  DSUF ¶ 1103.1.6.

each of these three Trusts provides that the relevant cure period before an EOD occurs is 10 days; "provided, however, that in the event that the Securities and Exchange Commission grants an extension of time to the Depositor with respect to [any required] Exchange Act filings . . . such ten day cure period shall be extended by the same time period." DSUF ¶ 1103.2. As the cure period is extended by the length of any extension to make an Exchange Act filing, it is clear that the drafters did not intend an EOD to result from the servicer's late delivery of an ASOC if it did not affect the Depositor's ability to make timely Exchange Act filings. ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████ *See Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008) ("a motion for summary judgment may be granted in a contract dispute only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning.").

MSAC 2005-HE7: ███████████████████████████████

████████████████████████████████████████████████

██████████████████ PSUF ¶ 444. ███████████████████

████████████████████████████████████████████████

*Compare* Goff Ex. 127 (March 5, 2007 ASOC) *with* Handlin Ex. 773 (October 16, 2007 ASOC). █████████████████████████████████████ There is at least an issue of fact as to the relevant delivery date.

**4.      In Any Event, Any EOD That Resulted from Late ASOCs Was Cured**

There is no dispute that the servicers did deliver the relevant ASOCs. Mtn. at 21-22. Plaintiffs, however, contend that although the servicers remedied any contractual breach by delivering the ASOCs, any EOD that resulted from that breach was not cured, and never could be.

*Id.* 23-24.  Plaintiffs miss the mark.

The GAs unambiguously provide that EODs can be cured, and if cured, the parties' rights and obligations revert to their pre-EOD state.  DSUF ¶¶ 1104; *see*, *e.g.*, Handlin Ex. 92 (GSAMP 2005-WM3 §§ 7.01 (". . . <u>so long as such Event of Default shall not have been remedied</u> . . ."), 7.03 (". . . <u>unless such Event of Default shall have been cured or waived</u>"); 8.01 ("<u>In the case an Event of Default has occurred and remains uncured</u> . . ."); 8.01 ("<u>Unless an Event of Default known to the Trustee has occurred and is continuing</u> . . ."); 10.05 ("<u>The occurrence of any Event of Default that has not been cured</u> . . .").  Nothing in the GAs remotely indicates that an EOD resulting from a servicing breach (including the failure to deliver an ASOC) cannot be cured.

Courts hold that remedying the triggering event cures a default.  *See*, *e.g.*, *Alleghany Corp. v. Guar. Tr. Co.*, 97 F.2d 367, 370–71 (2d Cir. 1938) (finding that the trust indenture at issue "does not in terms specify how an event of default may be cured but it seems evident that" if an Event of Default is triggered by the ratio of the value of the collateral to the outstanding notes falling below a certain threshold then "any restoration of the ratio if properly established will act as a cure"); *Bank of N.Y. Mellon Tr. Co. v. Solstice ABS CBO II, Ltd.*, 910 F. Supp. 2d 629, 649 (S.D.N.Y. 2012) (finding EOD would have been cured if the circumstances giving rise to the EOD had been remedied); *Klawonn v. YA Glob. Invs., L.P.*, No. 2:10-02108 (KM)(MAH), 2015 WL 457213, at *5-6 (D.N.J. Feb. 3, 2015) (EOD caused by failure to file registration statement cured by the late filing).[24]  Here, even if the servicers' failure to deliver an ASOC to Defendant by the deadline was an EOD, the servicers remedied any such EOD when they subsequently delivered

---

[24] *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 890 (2d Cir. 1990), cited by Plaintiffs (Mtn. at 23), is inapposite because it dealt with whether a preliminary injunction could prevent an event of default from occurring, <u>not</u> whether an event of default can be cured.

the ASOC.  *See id.*  Accordingly, the Court should deny Plaintiffs' request for summary judgment

that EODs due to allegedly late ASOCs "were triggered for these 8 Trusts on the dates indicated

and were not cured, subjecting [Defendant] to its post-EOD duties."

## II.    PLAINTIFFS HAVE FAILED TO PROVE THAT DEFENDANT BREACHED ANY POST-EOD PRUDENT PERSON DUTY

Plaintiffs assert they are entitled to summary judgment that Defendant breached a

post-EOD prudent person duty in 46 Trusts arising from:  (i) the Numerical Threshold EODs that

occurred in 17 Trusts, (ii) the Downgrade EODs that occurred in 1 Trust, (iii) supposed REO

servicing EODs that Plaintiffs incorrectly claim occurred in 46 Trusts and (iv) supposed late ASOC

EODs that Plaintiffs incorrectly claim occurred in 5 Trusts.[25]  Mtn. at 32-41.  Plaintiffs are wrong.

As a threshold matter, Plaintiffs' motion on this issue should be denied with respect to any

alleged breach of a prudent person duty supposedly arising from purported REO servicing matters

and late ASOCs because, as shown above, <u>no such EODs occurred</u>.    *Supra* § I.  In any event, as

demonstrated below, even if the Court were to determine that Defendant's prudent person duty

was triggered by EODs resulting from REO servicing or late ASOCs, Plaintiffs' motion would

still fail.

With respect to the Declared EODs, Plaintiffs' motion is based on the false premise that

undisputed material facts show Defendant took "no action at all" after learning those EODs

occurred.  Mtn. at 33.  Plaintiffs' theory is wrong as a matter of fact and law.

---

[25] Plaintiffs also seek judgment that Defendant breached a prudent person duty with respect to another

Trust, ARSI 2006-M2, but that Trust has never been in either case.  *See Phoenix Light* ECF Nos. 1, 20, 33,

189; *Commerzbank* ECF Nos. 1, 22, 89.

Cherry-picking testimony from witnesses who were not responsible for addressing EODs, Plaintiffs simply ignore evidence that Defendant implemented and adhered to a sound process regarding its post-EOD duties.   DSUF ¶¶ 1129, 1106, 1130-1134.   As part of that process, Defendant notified investors of EODs, reminded them of their rights, awaited their directions, and, where appropriate, took additional action.   DSUF ¶ 1106.1.   In some instances, including with respect to the 18 Declared EOD Trusts on which Plaintiffs' seek summary judgment, Defendant determined that taking no additional action absent investor direction was the prudent course. DSUF ¶ 1106.2.

Other than vague references on pages 5 and 58, respectively, of their moving brief to "seek[ing] repurchase of loans with a basis for repurchase" and "terminating culpable Servicers," Plaintiffs do not identify or analyze what Defendant was supposedly required to have done differently after each EOD to satisfy the prudent person standard, much less point to any supporting EOD-by-EOD (or even Trust-by-Trust) evidence.   Nor do Plaintiffs identify a single case holding that a securitization trustee breached its prudent person duty as a matter of law.   None of this is surprising as the record evidence shows that Defendant's actions were consistent with both industry practice and investor expectations, and the cases hold that the question of trustee prudence is a question of fact inappropriate for summary judgment.   In short, Defendant acted prudently, and at the very least, as courts have consistently held, questions of fact preclude granting summary judgment in Plaintiffs' favor.

## A.   Plaintiffs Do Not Identify, Much Less Prove, What Defendant Was Supposedly Required to Have Done Differently

To prevail on their claim, Plaintiffs must prove, as to each of the Declared and alleged EODs, that Defendant's actions fell outside the zone of prudence when "judged by the facts as they existed at the time the trustee acted" or failed to act. *See LNC Invs., Inc. v. First Fid. Bank*,

*N.A.*, No. 92 Civ. 7584 MBM, 1997 WL 528283, at *17 (S.D.N.Y. Aug. 27, 1997).  Specifically, as to each EOD, Plaintiffs must prove what Defendant was <u>required</u> to do differently in order to be prudent; why, when and how it was required to take that course; and how the outcome would have been better had Defendant taken that course instead of the one it did take.  *See Fixed Income*, 314 F. Supp. 3d at 560 (plaintiffs "would need to proffer concrete evidence from which a reasonable jury could conclude, on a non-speculative basis, that [the trustee] could have and should have obtained more than it did—or, more to the point, that a 'prudent person' would have taken steps to obtain more *and* would likely have succeeded") (emphasis in original).

Here, Plaintiffs do <u>not</u> identify, much less prove, what Defendant was required to do differently to satisfy any prudent person duty that arose from a Declared or alleged EOD.[26]  Indeed, although Plaintiffs acknowledged in their interrogatory responses that expert evidence is required to demonstrate imprudence, they did <u>not</u> submit any expert (or other) evidence showing what acts Defendant was supposedly required, but failed, to take as the result of any Declared or alleged EOD, let alone each of them.[27]  DSUF ¶ 1107.

Plaintiffs' failure to submit evidence on industry practice, alone, defeats their motion

---

[26] In *LNC*, which Plaintiffs quote for the proposition that sometimes prudence "will dictate one and only one course" (Mtn. at 32), the court denied summary judgment, holding that "whether there was only one prudent course for the trustees . . . is a question for the trier of fact to decide."  *LNC*, 1997 WL 528283, at *21.  Here, Plaintiffs do not identify any course, let alone the supposed "one and only one course."

[27] Plaintiffs' acknowledgment that this issue requires expert testimony further confirms that summary judgment is unwarranted.  *See FMS Bonds Inc. v. Bank of N.Y. Mellon*, No. 15 Civ. 9375 (ER), 2016 WL 4059155, at *12 (S.D.N.Y. July 28, 2016) (parties' statement that whether trustee satisfied prudent person issues was to be litigated via battle of experts rendered issue not appropriate for summary judgment).

because courts have repeatedly held that such evidence is <u>indispensable</u> for determining whether an RMBS or other corporate trustee has fulfilled a post-EOD prudent person duty. *See, e.g., FMS Bonds*, 2016 WL 4059155, at \*12 ("Without a more developed record as to what indenture trustees typically do under the circumstances and the consequences of different courses of action, the Court cannot grant summary judgment to Plaintiffs"); *Phoenix v. BNYM*, 2017 WL 3973951, at \*15 (same); *Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., N.A.*, 907 F. Supp. 2d 536, 555 (S.D.N.Y. 2012) (dismissing claim that after an EOD, "the Trustee should (or would) have taken it upon itself to force the Seller to repurchase any defective or deficient Mortgage Loans [because] [t]hat is simply <u>too distant a leap</u> for this Court to make without plausible allegations that other MBS trusts' trustees have taken similar action in similar circumstances (bolstering the actions a 'prudent person' would have taken)"); *see also W. & S. Life Ins.*, 2017 WL 3392856, at \*5 (rejecting plaintiff's argument at trial that an RMBS trustee breached a prudent person duty because "there is little to no evidence in the record as to what a 'prudent trustee' would have done in such an event.").[28]

Plaintiffs' lack of evidence is fatal to their motion (and claims) on the prudent person issue.

## B.   With Respect to the Declared EODs, the Evidence Confirms Defendant's Decision to Provide Notice and Await Investor Direction Was Prudent

The evidence in the record shows that Defendant's decision, with respect to the Declared EODs, to provide notice and await investor direction aligned with industry practice and investor

---

[28] *See also BlackRock Allocation Target Shares v. Wells Fargo Bank, N.A.*, Nos. 14-CV-9371 (KPF)(SN), 14-9764, 14-10067, 14-10102, 15-10033, 2017 WL 953550, at \*9 (S.D.N.Y. Mar. 10, 2017), *order clarified by* Nos. 14 Civ. 9371 (KPF)(SN), 14-9764, 14-10067, 14-10102, 15-10033, 2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017); *Royal Park Invs.,* 2017 WL 945099, at \*9.

expectations.  DSUF ¶ 1109.

      With respect to industry practice, Plaintiffs' lack of evidence that a prudent trustee in similar circumstances would have acted differently is not surprising, as Plaintiffs have sued all (or virtually all) RMBS trustees in separate lawsuits accusing each of them of failing to act prudently based on similar responses to EODs.   DSUF ¶ 1109.9.  In other words, Plaintiffs are arguing for an industry standard of care they recognize does not exist.  Defendant's industry expert, Professor Steven Schwarcz, confirmed that ███████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████  Goff Ex. 3 (Schwarcz Decl., Schwarcz Report at ¶ 4.21); DSUF ¶ 1109.10.[29]

      With respect to investor expectations, Defendant's expert, John Richard,[30] explained that

████████████████████████████████████████████████████████████████████

██████████████████████████████████████  Goff Ex. 5 (Richard Decl., Richard

---

[29] Professor Schwarcz is the Stanley A. Star Professor of Law & Business at Duke University School of Law and formerly a partner at Shearman & Sterling and Kaye, Scholer, Fierman, Hays & Handler.  DSUF ¶ 1109.10.  While in private practice, Professor Schwarcz specialized in structured finance, including RMBS, and represented many different transaction participants, including trustees. *Id.*  He has published various articles on structured finance and a book, STRUCTURED FINANCE:  A GUIDE TO THE PRINCIPLES OF ASSET SECURITIZATION.  Defendant retained Professor Schwarcz to provide rebuttal opinions on RMBS trustee industry custom and practice. *Id.*

[30] Mr. Richard is an investment professional with over 20 years of experience in the financial markets and has managed portfolios containing billions of dollars in RMBS securities.  DSUF ¶ 1109.3.  Defendant retained Mr. Richard to offer opinions on investor expectations with respect to the conduct of RMBS trustees relating to various issues.  DSUF ¶ 1109.4.

Rebuttal ¶ 13); *see also* Goff Ex. 31 (J. Richard Dep. (Oct. 4, 2018) at 537:3-13) (██████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ ); DSUF ¶ 1109.1.   Mr. Richard

explained why investors had this expectation:



Goff Ex. 5 (Richard Decl., Richard Rebuttal ¶ 4);[31] *see id.* (Richard Report ¶ 28); DSUF ¶ 1109.2.

    Other evidence confirms that investors had differing views on what actions should be

taken.  For example, at the direction of an investor, Defendant sent a solicitation to investors in

one of the Trusts at issue seeking their views on whether to initiate repurchase litigation relating

to alleged R&W breaches.   DSUF ¶ 1109.5.   The majority of voting investors <u>voted against</u>

expending trust assets to pursue repurchase claims (*i.e.*, 42.25% voted against v. 24.06% voted

for).   DSUF ¶ 1109.6.   ████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[31] ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

    ███████████ Goff Ex. 5 (Richard Decl., Richard Report ¶¶ 4, 13, 21) (██████████████████

██████████████████████████████████ ); DSUF ¶ 1109.8.

████████████████████████[32]  DSUF ¶ 1109.7.  Given the actual and potential differences of opinion among investors, it was impossible for trustees to know what, if any, course of action most investors preferred, and therefore notifying investors of EODs and awaiting direction was prudent.

Thus, the evidence confirms the prudence of Defendant's response to the Declared EODs.

### C.    Even if Plaintiffs Had Presented Any Evidence to the Contrary, Open Issues of Fact Would Still Preclude Summary Judgment

Courts have uniformly held that analyzing whether a trustee's conduct was imprudent necessarily involves issues of fact,[33] and Plaintiffs do <u>not</u> cite a single summary judgment decision holding, as a matter of law, that an RMBS or other corporate trustee breached its post-EOD prudent

---

[32]  DSUF ¶ 1109.7.

[33] *See, e.g., FMS Bonds*, 2016 WL 4059155, at *12 (denying summary judgment because "[t]he question of the Trustee's prudence under these specific circumstances is thus a mixed question of fact and law that is not resolvable at this stage and on this record."); *LNC*, 1997 WL 528283, at *16 (denying summary judgment because "determinations of reasonableness and prudence are fact-intensive, and in this case there are issues of fact as to whether the trustees acted or failed to act as reasonably prudent people"); *Dresner Co. Profit Sharing Plan v. First Fid. Bank, N.A.*, No. 95 Civ 1924 (MBM), 1996 WL 694345, at *7 (S.D.N.Y. Dec. 4, 1996) (denying summary judgment because "[t]he issue of prudence, here, presents a question of fact").

person duties.[34]  Indeed, in 2017, Plaintiffs sought summary judgment in a similar case, *Phoenix v. BNYM*, 2017 WL 3973951, at \*1, making the same "prudent person" arguments they make here. Judge Caproni denied the motion in its entirety.  She recognized that:

> Given the complexities of these Trusts, a prudent person may have simply issued a Notice and waited for direction (as BNYM [and Defendant here] did); but, a prudent person may also have been less passive and pursued remedies against the servicer . . .  Whether BNYM's issuance of a Notice and failure to act (because it had not received certificateholder direction) was sufficient to discharge its prudent person duty is a question of fact that is inappropriate for resolution at this stage . . . As noted in another case against BNYM as Trustee, 'Without a more developed record as to what indenture trustees typically do under the circumstances and the consequences of different courses of action, the Court cannot grant summary judgment to Plaintiffs . . .'

*Id.* at \*15.  Judge Caproni's reasoning is, at least, equally applicable here.  In *Phoenix v. BNYM*, Plaintiffs moved for summary judgment, and Judge Caproni decided that motion, <u>before</u> there was any expert evidence in the record.  *Id.* at \*23.  Here, Plaintiffs moved for summary judgment <u>after</u> expert discovery on trustee prudence had closed, and they still cite <u>no evidence</u> that any RMBS trustee took a different course of action than Defendant.

Nor do Plaintiffs offer any evidence indicating that the facts and circumstances concerning any Declared or alleged EOD warranted a specific course that Defendant was required, but failed, to take.  Nor do Plaintiffs attempt to address any factors that may be relevant to assessing a trustee's post-EOD course of action, which include investor expectations, the type of EOD, the circumstances giving rise to the EOD, and the potential cost/benefit of a proposed response:

- <u>Whether investors wanted and expected Defendant to take the proposed action</u>:  As

---

[34] It is telling that Plaintiffs open their moving brief with quotes from an irrelevant 1936 SEC report to Congress addressing Depression-era protective and reorganization committees.  *See* Mtn. at 1-2.

set forth above, investors had different views on what actions should be taken.  Defendant's expert,

Professor Schwarcz, observed ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ Goff Ex. 3 (Schwarcz

Decl., Schwarcz Report ¶ 5.8); DSUF ¶ 1115.  And, ████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████ DSUF ¶¶ 1116-1119.  Defendant could not assume that investors who did not issue a

direction wanted Defendant to spend trust funds (that would otherwise be paid to investors) on

expensive actions with uncertain outcomes.

- Each EOD and Its Attendant Circumstances Are Different:  As Defendant's expert,

Professor Steven Schwarcz, explained ████████████████████████████████████████

████████████████.  DSUF ¶ 1110.  In addition to the type of EOD, the specific circumstances

giving rise to the EOD may affect what is prudent.  DSUF ¶ 1111.  ████████████████████

████████████████████████████████████████████████████████████████.  DSUF

¶ 1112.[35]  For example, ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ Goff Ex. 32 (M. Adelson Dep.

(Oct. 3-4, 2018) at 258:1-11); DSUF ¶ 1113.  ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

---

[35] Defendant expressly reserves all objections to the admissibility of any opinions offered by Plaintiffs'
purported experts, Mark Adelson and Ingrid Beckles, including objections concerning their qualifications
and expertise.

downgrade." Goff Ex. 32 (M. Adelson Dep. (Oct. 3-4, 2018) at 436:16-437:21); DSUF ¶ 1114.

- <u>Cost/Benefit of Potential Response</u>:  As Defendant's expert, Professor Schwarcz explained, ███████████████████████████████████████████████████ ██████████████████████ DSUF ¶ 1120. ████████████████ DSUF ¶ 1121.

To the extent Plaintiffs are suggesting that after an EOD, Defendant should have (i) terminated a servicer (Mtn. at 58), or (ii) investigated whether loans in the Trust breached R&Ws and pursued repurchase actions (*id.* at 5), there are additional specific considerations concerning those potential courses of action.  For example, terminating a servicer is a drastic step that creates risk and expense for investors in a trust because, among other things, it could lead to disruption in loan collection activity and/or litigation with the former servicer, both of which could reduce cash flows to investors.  DSUF ¶ 1116.  Moreover, replacing a servicer necessarily requires the existence of a viable replacement servicer that is competent, has additional capacity to service the thousands of loans in the trust, and is willing to take on this role.  DSUF ¶ 1117.  According to Defendant's expert, Mr. Richard, ██████████████████████████████████████ ████████████████████████████████████████████████████ Goff Ex. 5 (Richard Decl., Richard Report at ¶ 26); DSUF ¶ 1119.

With respect to R&W investigations and lawsuits, additional specific considerations include:

- <u>Whether a viable defendant could satisfy a judgment</u>:  As Defendant's expert, Professor Schwarcz, explained, ███████████████████████████████████████ ████████████████████████████████████ DSUF ¶ 1122. █████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████ Goff Ex. 32

(M. Adelson Dep. (Oct. 3-4, 2018) at 391:20-393:1); DSUF ¶ 1123. ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ DSUF ¶ 1124.

- Whether repurchase claims still existed when the EOD occurred:  Professor

Schwarcz explained that ██████████████████████████████████████

████████████████████████████████████████████████████

████████     DSUF ¶ 1125.  For two of the Declared EOD Trusts, Defendant settled the

Warrantor's repurchase liability before the EODs, and therefore no repurchase claims remained to

pursue.  DSUF ¶ 1126.  And, depending on the date of the alleged EOD, repurchase claims may

have been time-barred.

- Other factors influencing the success of the potential repurchase litigation relative

to the benefits and costs:  In addition to the solvency of the relevant Warrantor, settlements, and

statute of limitations, Professor Schwarcz observed that ████████████████████

████████████████████████████████████████████████████

Goff Ex. 3 (Schwarcz Decl., Schwarcz Report ¶¶ 5.12, 5.48); DSUF ¶ 1127; *see also* Goff Ex. 5

(Richard Decl., Richard Report ¶ 33) (████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████);

DSUF ¶ 1128.  Thus, the costs were high and expected benefits very uncertain.[36]

Accordingly—even if Plaintiffs' had identified, and presented any evidence as to, what Defendant was supposedly required to have done differently after each Declared and alleged EOD—Plaintiffs still would not be entitled to summary judgment given that any assessment of prudence would be fact-intensive.  *See Phoenix v. BNYM*, 2017 WL 3973951, at *15; *FMS Bonds*, 2016 WL 4059155, at *12; *LNC*, 1997 WL 528283, at *16; *Dresner*, 1996 WL 694345, at *7.

### D.    Plaintiffs Mischaracterize Defendant's Post-EOD Practices as "Doing Nothing" and Ignore Evidence Regarding the Steps that Defendant Took

Plaintiff's entire post-EOD theory is based on two false factual premises: (i) that Defendant did nothing after EODs occurred, and (ii) that Defendants believe that "doing nothing was the prudent thing in every situation."  Mtn. at 33.  In trying to create the false impression that Defendant did not know of or act upon its post-EOD prudent person duties, Plaintiffs cite testimony of employees who were not tasked with responding to EODs.  Specifically, Plaintiffs cite ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████  DSUF ¶ 1130.  Plaintiffs ignore the testimony of ████████████████████████████████████████████████ ██████████████████████████████████  Mtn. at 35-41; DSUF ¶ 1131. ████████████████ ██████████████████████████████  DSUF ¶ 1132. ████████████████████████ ████████████████████████████████████████████████████████████████████████

---

[36] As Professor Schwarcz explained, ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████  Goff Ex. 3 (Schwarcz Decl., Schwarcz Report ¶¶ 5.20-5.21); DSUF ¶ 1129.

████████████

The record demonstrates that, ███████████████████████████████

█████████████████████████████████████ DSUF ¶ 1133.  TMG then

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ DSUF

¶ 1134.  ████████████████████████████████████████████████

█████████████████████████████████ DSUF ¶ 1135.[37]  Plaintiffs

cannot meet their heavy burden on a motion for summary judgment by ignoring testimony that

conflicts with their theory.

**E.**     **Defendant Cannot Be Liable Because It Believed in Good Faith That Its Actions Complied with the Governing Agreements**

The Governing Agreements provide that Defendant shall not be liable for any act or failure

to act that was undertaken with a good faith belief.  DSUF ¶ 1137.  ████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████ DSUF ¶ 1138.  ██████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

---

[37] Other prominent investors and their counsel praised Defendant for their actions in doing so.  DSUF

¶ 1136.  With respect to bankruptcies, among other things, DBNTC served on the Official Committee of

Unsecured Creditors and the Plan Oversight Committee with respect to the American Home bankruptcy

and on the Official Committee of Unsecured Creditors and the Plan Advisory Committee with respect to

the New Century bankruptcy.  DSUF ¶¶ 1135.1-1135.2.

███████[38]   At a minimum, the current record is not sufficient for Plaintiffs to establish that Defendant did not have a good faith belief, and the Court should deny Plaintiffs' motion on that basis alone.

### F.   Defendant's Response to Alleged REO Servicing Matters and Late ASOCs Was Reasonable and Prudent

Even if the Court determines that Defendant's post-EOD prudent person duties were triggered by REO servicing matters and late ASOCs, Defendant's response to those matters was reasonable and prudent.  With respect to REO servicing matters, ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████ DSUF ¶¶ 1140-1144.

With respect to late ASOCs, the evidence shows that █████████████████████████

████████████████████████████████████████ DSUF ¶ 1145.

Plaintiffs offer no evidence that Defendant departed from that practice with respect to the late ASOCs referenced in their motion.  And the evidence shows Defendant's practice resulted in the EODs being cured – the ASOCs were delivered – which after all is the whole point.  DSUF ¶ 1146.

---

[38] Defendant is not asserting an advice of counsel defense.  References to a communication with counsel can evidence good faith without waiving the attorney-client privilege.  *See CFIP Master Fund, Ltd. v. Citibank N.A.*, 738 F. Supp. 2d 450, 473-74, 474 n.27 (S.D.N.Y. 2010).

III.   **DEFENDANT'S AGREEMENT TO "HOLD THE TRUST FUND AND EXERCISE THE RIGHTS REFERRED TO ABOVE FOR THE BENEFIT OF . . . CERTIFICATEHOLDERS" DOES NOT CREATE A PRE-EOD DUTY TO ENFORCE R&W REPURCHASE OBLIGATIONS**

Plaintiffs seek summary judgment that the language in 40 GAs providing that "[Defendant] agrees to hold the Trust Fund and exercise the rights referred to above for the benefit of [certificateholders]" "expressly obligates" Defendant to enforce a Warrantor's repurchase obligation if Plaintiffs' can prove at trial that Defendant "has knowledge" of a R&W breach.  Mtn. at 45-47.  Plaintiffs are mistaken.

A.     **Plaintiffs' Collateral Estoppel Argument Is Meritless**

Plaintiffs argue that Defendant is collaterally estopped from opposing Plaintiffs' proposed interpretation of the 40 GAs based on an order denying DBNTC's motion to dismiss in another RMBS trustee case, *Royal Park Investments SA/NV v. Deutsche Bank National Trust Company* ("*RPI v. DB*"), No. 14-CV-4394 (AJN), 2016 WL 439020, at *4 (S.D.N.Y. Feb. 3, 2016).[39]  Mtn. at 44.  Plaintiffs are wrong for at least two reasons.

First, the doctrine of collateral estoppel is inapplicable because an order denying a motion to dismiss is not a "valid and final judgment on the merits."  *See*, *e.g.*, *Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245, 265 (S.D.N.Y. 2013) (declining to apply collateral estoppel because denial of motion to dismiss is not a "final judgment on the merits" for purposes of collateral estoppel); *City of Amsterdam v. Daniel Goldreyer, Ltd.*, 882 F. Supp. 1273, 1279 (E.D.N.Y. 1995) ("the doctrines of res judicata and collateral estoppel are inapplicable" to the denial of a motion to dismiss); *see also Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 237 (2d Cir. 2018) (affirming that denial of motion for judgment did not have collateral estoppel effect, because the decision

_____

[39] Defendant respectfully disagrees with the *RPI v. DB* decision, which, as shown below, was incorrect.

-45-

"has not proceeded yet to final judgment" and defendant "has not had an adequate opportunity for appellate review"); *Hill v. City of New York*, 45 F.3d 653, 659 (2d Cir. 1995) ("a denial of a motion to dismiss is ordinarily considered non-final").[40]

Second, neither the operative language nor the rest of the pertinent contract that was at issue in *RPI v. DB* is identical to the 40 GAs that Plaintiffs are asking this Court to interpret. DSUF ¶ 1147. For example, unlike the relevant contract in *RPI*, many of the 40 GAs at issue here contain provisions expressly addressing who has the obligations to do what and under what circumstances (and sometimes how) those obligations arise. DSUF ¶ 1147.1. As demonstrated below, Plaintiffs' proposed construction would render those provisions superfluous. In addition, the *RPI v. DB* court focused on the following phrase in the contract at issue there: "and to perform the duties set forth in this Agreement to the best of its ability, to the end that the interests of the Holders of the Certificates may be adequately and effectively protected." *See RPI v. DB*, 2016 WL 439020, at *4. And Plaintiffs quote that language in bold, emphasizing its significance to their argument. Mtn. at 45. But that language is <u>not</u> in 38 of the 40 GAs at issue here. DSUF ¶ 1147.2. Accordingly, collateral estoppel is inapplicable because the issue addressed by the *RPI v. DB* court is not identical to the issue raised here. *See Flood*, 904 F.3d at 236.

---

[40] *Braun v. City of New York*, 284 F. Supp. 3d 572 (S.D.N.Y. 2018), the only case cited by Plaintiffs as supposed support of their argument, is distinguishable. Among other things, the prior ruling in that case was an order <u>granting</u> a motion to dismiss, which, unlike the *RPI v. DB* order <u>denying</u> a motion to dismiss, "may be considered a final judgment on the merits" and granted preclusive effect. *See, e.g.*, *Wills*, 981 F. Supp. 2d at 265.

**B.**     <u>Plaintiffs' Proposed Interpretation Is Incorrect</u>

The GAs for the 40 Trusts provide that before Defendant has the contractually specified knowledge of an EOD, Defendant "shall undertake to perform such duties and <u>only such duties as are specifically set forth in this Agreement</u> . . . [and] shall not be liable except for the performance of the duties and obligations <u>specifically set forth in this Agreement</u>."  DSUF ¶ 1148.  Consistent with this language, the Second Circuit has recognized that the duties of a securitization trustee "are strictly defined and limited to the terms of the [governing agreement]."  *Elliott Assocs. v. J. Henry Schroder Bank & Tr. Co.*, 838 F.2d 66, 71 (2d Cir. 1988).  Contrary to the unambiguous contract language and Second Circuit precedent, Plaintiffs argue that—if Defendant has knowledge of an alleged R&W breach—clauses like the following obligate Defendant to take some undefined action, likely at great expense to the Trusts, in an attempt to enforce a Warrantor's alleged repurchase obligation:

> Section 2.04.  Execution and Delivery of Certificates.  The Trustee acknowledges the transfer and assignment to it of the Trust Fund and, concurrently with such transfer and assignment, has executed and delivered to or upon the order of the Depositor, the Certificates in authorized Denominations evidencing directly or indirectly the entire ownership of the Trust Fund.  The Trustee agrees to hold the Trust Fund and exercise the rights referred to above for the benefit of all present and future Holders of the Certificates.

DSUF ¶ 1149.  Plaintiffs are incorrect.

The general language in these types of clauses, which appear in every GA, is intended to satisfy the requirement that an instrument creating a trust include "an expression of intent that property be held, at least in part, <u>for the benefit of one other than the settlor</u>." George Gleason Bogert et al., *The Law of Trusts & Trustees* § 1, Westlaw (database updated June 2018); *see also* Restatement (Third) of Trusts § 2 (2003) (elements of a trust include a trustee who agrees to hold and use trust property "<u>for the benefit of one or more others</u>").  A reading of the GAs as a whole,

including the language limiting Defendant's duties to those "<u>specifically set forth in this</u> <u>Agreement</u>," confirms that these clauses were <u>not</u> intended to place an unspecified duty on Defendant to take unspecified enforcement action under unspecified circumstances.  *See*, *e.g.*, *CFIP*, 738 F. Supp. 2d at 471-75 (granting summary judgment for trustee and finding that general contract language requiring the trustee to "discharge its responsibilities 'for the benefit of the holders of the Certificates,'" does not create obligations beyond "the narrowly circumscribed responsibilities identified in the trust agreement.").  Indeed, when the parties to a GA intended for Defendant to have enforcement obligations, they expressly and specifically said so.  DSUF ¶ 1150.

For example, the GA for GSAA 2006-15 provides:

> <u>The Trustee shall [] enforce</u> the obligation of the Responsible Parties under the Sale Agreements . . . to cure or repurchase Mortgage Loans for which there is a defect or a breach of a representation or warranty thereunder of which a Responsible Officer of the Trustee has actual knowledge, <u>by notifying the applicable party to correct or cure such default</u>.  If . . . any Responsible Party . . . fails or is unable to correct or cure the defect or breach within the period set forth in the applicable agreement, the Trustee shall notify the Depositor of such failure to correct or cure. Unless otherwise directed by the Depositor within five (5) Business Days after notifying the Depositor of such failure by the applicable party to correct or cure, the Trustee shall notify such party to repurchase the Mortgage Loan. If, within ten (10) Business Days of receipt of such notice by such party, such party fails to repurchase such Mortgage Loan, the Trustee shall notify the Depositor of such failure. <u>The Trustee shall pursue all legal remedies available to the Trustee against . . . the Responsible Parties . . . as applicable, under this Agreement, if the Trustee has received written notice from the Depositor directing the Trustee to pursue such remedies.</u>

DSUF ¶ 1150.1 (GSAA 2006-15 MSTA § 2.02).  In contrast, the GAs for other Trusts specifically provided that parties <u>other than Defendant</u> had these duties.  DSUF ¶ 1151.  Adopting Plaintiffs' interpretation of the general "for the benefit of . . . Holders" clause would render specific language in some GAs superfluous and would be counter to language in others, upsetting the intent and bargain of the sophisticated negotiating parties.  *See Galli v. Metz*, 973 F.2d 145, 149 (2d Cir.

1992) ("Under New York law an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible."); *CFIP*, 738 F. Supp. 2d at 471-75.[41]

## IV. THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR A SPECULATIVE RULING ON WHAT DUTIES DEFENDANT MIGHT HAVE HAD IF IT HAD FAILED TO PROVIDE NOTICE TO DEPOSITORS

Relying on the "prevention doctrine," Plaintiffs claim they "are entitled to judgment that, if they prove at trial that (as to 12 Trusts) DB discovered or (as to 4 Trusts) DB had actual knowledge of loans in these Trusts with R&W breaches, but failed to notify the Depositor of them, DB had a duty to pursue all legal remedies available to it to enforce the repurchase of those loans." Mtn. at 47-48. Numerous issues of fact make summary judgment inappropriate.[42] While some courts have held that the prevention doctrine applies where the party seeking to rely on the non-existence of a condition precedent either had, and breached, a duty to bring about that condition or actively frustrated its occurrence (*see In re Bankers Tr. Co.*, 450 F.3d 121, 127 (2d Cir. 2006)),[43] the ruling Plaintiffs seek goes well beyond this precedent.

---

[41] In addition, there are contested issues of fact as what it means to "enforce breaches of R&Ws" that preclude summary judgment (*e.g.*, does it mean to give notice (as specified in section 2.02 of the GA for GSAA 2006-15 requiring Defendant to "<u>enforce . . . by notifying the applicable party to correct or cure such default</u>") or something else). *See* DSUF ¶ 1150.1.

[42] Plaintiffs again claim that the same *RPI v. DB* order collaterally estops Defendant from opposing this argument. Mtn. at 47-48. That order has no preclusive effect. *Supra* § III.A.

[43] Courts have also recognized that the prevention doctrine does not apply when neither of these two conditions has been satisfied. *See Fixed Income*, 69 N.Y.S.3d at 290; *Blackrock*, 86 N.Y.S.3d at 485-86.

As detailed above, certain GAs provide that Defendant has a duty to pursue remedies against a Warrantor for not repurchasing a loan with an R&W breach, "<u>if the Trustee has received written notice from the Depositor directing the Trustee to pursue such remedies</u>."  Plaintiffs seek a speculative, advance ruling that would prevent Defendant from relying on the non-occurrence of this Depositor direction condition at trial, if Plaintiffs can prove at trial that Defendant failed to provide the Depositor with notice of an R&W breach that Defendant discovered.  Mtn. at 48. Plaintiffs' logic is flawed, and numerous open fact issues make the judgment requested by Plaintiffs wholly inappropriate.

For example, some of the GAs provide that Defendant had a duty to give notice to the Depositor and other transaction participants <u>if</u> Defendant had actual knowledge of an R&W breach with respect to a mortgage loan that "<u>materially and adversely</u>" affects the interests of the certificateholders or trustee in that loan, which is inherently a question of fact.  DSUF ¶ 1153. Moreover, if Defendant did not provide the Depositor with notice of an R&W breach but the evidence shows another party to the GA did, Defendant would <u>not</u> be prevented from relying on the lack of Depositor direction.[44]  Nor would Defendant be prevented from relying on the lack of Depositor direction if the evidence shows the Depositor was otherwise aware of the R&W breach and did not direct Defendant.  Finally, as shown in Defendant's affirmative motions for summary judgment, the evidence shows that Defendant complied with its duties to provide notice of alleged R&W breaches.  DSUF ¶ 1155.  Plaintiffs' motion for summary judgment on this hypothetical— and, in light of the notice having been provided, irrelevant—issue that involves numerous open questions of fact should be denied.

---

[44] All of the GAs subject to Plaintiffs' argument provide that if any party thereto discovers an R&W breach, it must notify the other parties.  DSUF ¶ 1154.

## V.   PLAINTIFFS' DOCUMENT EXCEPTION CLAIMS ARE NOT ACTIONABLE AND PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT

Plaintiffs seek to impose liability based on Defendant's alleged knowledge of, and failure to address, missing or non-conforming mortgage/collateral file documents:

- Plaintiffs assert: ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████   Mtn. at 41-42.   Based on these assertions, Plaintiffs seek a "judgment as to DB's knowledge of the defects" so that at trial, the factfinder will purportedly "determine only whether DB breached its duties with respect to the loans in these exception reports and the damages resulting from the breaches." *Id.* at 42-43.

- For 8 Trusts, Plaintiffs also seek judgment that "DB had a pre-EOD duty to enforce repurchase where DB was required, but failed, to notify the Depositor of loans with Mortgage File defects." *Id.* at 48.   Plaintiffs concede that, under the GAs for the 8 Trusts, Defendant had a duty to enforce only if the Depositor directed it to do so. *Id.* at 50.   But Plaintiffs ask the Court to ignore that requirement, somehow seeking judgment that Defendant had a pre-EOD duty to enforce repurchase of loans with document defects even if "it never got direction from the Depositor." *Id.* at 51.   For 3 of those 8 Trusts, Plaintiffs also seek a conclusory judgment that Defendant somehow breached this purported duty to enforce even though it never received a direction for the Depositor. *Id.* at 51-53.

Plaintiffs' requests for judgment should be denied for at least three independently sufficient reasons.   First, as this Court already determined, claims pertaining to delivery of mortgage file documents are time-barred.   Second, and relatedly, Plaintiffs expressly abandoned any pre-EOD

claims with respect to the alleged mortgage file document deficiency issues.  <u>Third</u>, Plaintiffs have

not established uncontested facts that support judgment as a matter of law.

A.    <u>Document Exceptions and 2% Letters</u>

When each RMBS transaction closed, the depositor, sponsor or seller was obligated to

deliver mortgage/collateral files relating to the loans in the Trust to Defendant or a document

custodian.  DSUF ¶ 1156.  The contents of the mortgage/collateral file for each loan are set forth

in the GAs and typically include the note, the mortgage, an assignment of mortgage, and a title

insurance policy.  DSUF ¶ 1157.  Within a specified time-period after closing, often 90 days,

Defendant or a custodian was required to issue a final certification with an "exception report" that

was generated by the custodian and listed any mortgage/collateral file documents that were missing

or nonconforming.  DSUF ¶ 1158.  In preparing the exception reports, Defendant or the custodian

did not make any determination with respect to the materiality of any exception; rather it merely

noted: (i) any literal variance between which documents were required to be delivered and which

documents were delivered and (ii) whether the data elements on a schedule that identified certain

loan characteristics matched the face of the documents.  DSUF ¶ 1159.

Generally, the GAs provide that, after receiving notice of a material missing or

nonconforming document, the responsible party (*e.g.*, the seller or originator) has a set period of

time, often 30-60 days, to cure the defect or substitute or repurchase the loan.  DSUF ¶ 1160.  If it

does not do so within the specified time period and if the exception is material, one of the deal

parties may have certain duties to take steps to enforce the responsible parties' obligations.  DSUF

¶ 1161.



DSUF ¶ 1162.

DSUF ¶ 1165.

DSUF ¶ 1166.

DSUF ¶ 1167.

**B.**    **Plaintiffs' Document Delivery Claims Are Time-Barred and Have Been Abandoned**

In seeking summary judgment related to document delivery issues, Plaintiffs ignore this Court's prior rulings and their own pleadings.

In the *Phoenix Light* action, Defendant moved to dismiss claims concerning incomplete or defective mortgage/collateral files on statute of limitations grounds.   In opposing that motion, Plaintiffs represented to the Court that they were <u>not</u> pursuing pre-EOD claims arising from the delivery of mortgage loan documents or the related certifications/exception reports:

---

45 

DSUF ¶ 1164.

> <u>Deutsche Bank again misreads the SAC by arguing that its claims
> as to incomplete loan files are untimely because the bank delivered
> final exception reports more than six years prior to the filing of this
> action</u> . . . But Plaintiffs do not assert that Deutsche Bank breached
> the PSAs when it delivered the final exception reports.  Instead, the
> SAC alleges that Events of Default occurred under the PSAs
> because the Servicers failed to act as a prudent servicer would when
> presented with defaulted loans that had incomplete mortgage files .
> . . <u>Plaintiffs intentionally omitted from the SAC any breach of
> contract claims based on Deutsche Bank's pre-Event of Default
> failure to adhere to its document delivery and certification
> obligations</u> in light of the decision in *Royal Park*.

*Phoenix Light* ECF No. 40 at 12-13.  Thereafter, the Court held: "<u>Claims for document delivery</u>

<u>failures are barred by the statute of limitations</u>."  *Phoenix v. DB*, 172 F. Supp. 3d at 709.

This ruling became law of the case.  Under the law of the case doctrine, "a decision on an

issue of law made at one stage of a case becomes binding precedent to be followed in subsequent

stages of the same litigation." *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991). This rule is

designed to "avoid reconsideration of matters once decided during the course of a single continuing

lawsuit." *Id.*

Following the Court's ruling in *Phoenix Light*, Commerzbank amended its complaint.

While contending that document delivery issues could give rise to an EOD, Commerzbank

expressly relinquished any claim against Defendant arising from document delivery failures:

"<u>Commerzbank's claims do not include claims against Deutsche Bank for breaching its document</u>

<u>delivery-related duties</u>." *Commerzbank* ECF No. 89, ¶ 35.

Notwithstanding that the Court already ruled on the issue and the cases were litigated based

on Plaintiffs' concessions,[46] Plaintiffs now seek judgment on the very claims they gave up:  that

---

[46] For example, had Commerzbank not expressly disclaimed any such claims, Defendant would have moved

to dismiss in *Commerzbank* on the same grounds as it did in *Phoenix Light*.

Defendant had duties to enforce repurchase obligations arising from missing documents but failed to do so; that Defendant failed to provide notice of missing documents; and that Defendant had knowledge of missing documents – as a predicate to a claim that Defendant breached duties with respect to the defects.  Plaintiff cannot amend their complaint through a summary judgment brief and pursue claims they already lost or abandoned.  *See, e.g.*, *Enzo*, 981 F. Supp. 2d at 223 (citing *Avillan*, 483 F. App'x at 639); *In re NXXI Inc.*, 216 F. Supp. 3d 381, 399 (S.D.N.Y. 2016) (abandonment discontinues claims).

Moreover, even if the Court were to revisit the issue (it should not), any claims pertaining to document delivery are time-barred.  The longest theoretical statute of limitations for Plaintiffs' claims is six years,[47] and the Trusts closed, the final certifications with attached exception reports were delivered, and, thus, any related claims against Defendant accrued more than six years before Plaintiffs filed these lawsuits.  *See Phoenix v. DB*, 172 F. Supp. 3d at 709; DSUF ¶ 1168.

### C.      The 2% Letters Do Not Re-Start the Limitations Clock

In an attempt to evade the Court's statute of limitation ruling, Plaintiffs point out that the last round of 2% Letters was sent for 75 Trusts in 2010 and 2011, and seek judgment that the Defendant "was aware of these outstanding [document] exceptions [listed on the exception report attached to the letter] as of the date of the relevant letter."  Mtn. at 42.  Plaintiffs then state their intention to argue at trial that "[Defendant] breached its duties with respect to the loans in these exception reports."  *Id.* at 43.  But the date of the last exception report listing a document exception is irrelevant for assessing the timeliness of Plaintiffs' claim that Defendant breached some duty to

---

[47] As set forth in Defendant's motion for summary judgment, many of Plaintiffs' claims are subject to the shorter three-year German statute of limitations.

take action concerning that document exception.  Rather, the date of the <u>first</u> exception report listing that document exception is the pertinent date.

Well settled New York law holds that "a breach of contract cause of action accrues at the time of the breach," even if "no damage occurs until later."  *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402-03 (1993).  Moreover, the failure to cure a breach does not constitute a continuing violation.  *See, e.g.*, *First Am. Title Ins. Co. of N.Y. v. Fiserv Fulfillment Servs., Inc.*, No. 06 CIV. 7132 (NRB), 2008 WL 3833831, at *2 (S.D.N.Y. Aug. 14, 2008) (granting defendant summary judgment and holding breach of contract claim was time-barred, because "defendant's failure to record the mortgages was a breach of contract" and the mere fact that "defendant 'could have' recorded the mortgages" at a later date and thereby prevented injury "overlooks the distinction between a breach and the ability to cure a breach"); *see generally ACE Secs. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581 (2015) (rejecting argument that cure and repurchase obligation are a separate promise of future performance).

As Plaintiffs concede, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  *See* Mtn. at 41.  Put differently, any claim that Defendant breached a duty relating to any such document exception accrued on the date that Defendant received the first exception report listing the document exception and is, as the Court already held, time-barred.  *See Phoenix v. DB*, 172 F. Supp. 3d at 709.  The fact that exceptions listed on the <u>first</u> exception report continued to be listed on the <u>last</u> exception report attached to the 2% Letters does not constitute a new breach, but, at most, reflects that the original alleged breach remained uncured.

### D.    Materiality Is a Question of Fact That Precludes Summary Judgment

Even if Plaintiffs had not abandoned document delivery claims and those claims were timely, open issues of fact would still preclude the relief Plaintiffs are seeking relating to those claims.  To succeed on any claim regarding alleged document delivery failures, Plaintiffs must prove that the alleged document defect was <u>material</u>. Put differently, the Court cannot determine that the relevant seller had an obligation to repurchase the relevant loan from the Trust unless the Court finds that: (i) a particular document had a <u>material</u> defect or (ii) the absence of a particular document from the mortgage file had a <u>material</u> impact.  Plaintiffs offer no evidence on these points, which is fatal to their motion.

The GAs for a number of the Trusts specifically include a materiality requirement with respect to document issues that trigger cure, substitution or repurchase obligations.  DSUF ¶ 1169. Even as to GAs that do not expressly say so, materiality is still required.  *See*, *e.g.*, *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 103 F. Supp. 2d 711, 735 (S.D.N.Y. 2000) ("[I]t is well-settled under New York law that an immaterial breach cannot be a basis for rescission."), *aff'd*, 294 F.3d 383 (2d Cir. 2002); *In re Lipper Holdings, LLC*, 1 A.D.3d at 171 ("A contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties."); Goff Ex. 3 (Schwarcz Decl., Schwarcz Report at ¶ 5.16).  ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████  Goff Ex. 32 (M. Adelson Dep. (Oct. 3-4, 2018) 538:4-539:15); DSUF ¶ 1170.

Materiality is inherently a question of fact.  *See, e.g., Bear, Stearns Funding, Inc.*, 361 F. Supp. 2d at 295-97; *supra* at § I.A.5.  And here, there are multiple open issues including what "materiality" means, who determines "materiality," and which uncured exceptions listed in the

final certifications and 2% Letters, if any, are "material." These issues are disputed. 

DSUF ¶ 1171. However, Defendant's experts, and Plaintiffs' other expert, Mr. Adelson, disagree with Ms. Beckles's dubious assertion. DSUF ¶ 1172.

Because materiality is a disputed issue of fact and fundamental to determining whether a document defect triggers the seller's repurchase obligations, the Court should not, as Plaintiffs' request, grant judgment (i) with respect to Defendants' purported "knowledge of the defects" and jump to consideration of breach and damages (Mtn. at 41-44), or (ii) that Defendant had, and breached, duties to enforce repurchase obligations relating to document defects (*id.* at 48-51).

### E.   The Court Should Not Grant Judgment With Respect to the Eight Trusts for Which Plaintiffs Claim Defendant "Failed to Notify the Depositor"

Plaintiffs assert that, for eight Trusts, Defendant had a pre-EOD duty "to enforce repurchase of loans with missing or defective Mortgage Files documents if directed by the Depositor." Mtn. at 48-49. For all eight Trusts, Plaintiffs seek judgment that Defendant "had a pre-EOD duty to enforce repurchase," even if "it never got direction from the Depositor." *Id.* at 48-51. For three of the eight Trusts, Plaintiffs also seek judgment that Defendant breached that duty. *Id.* at 51-54. [48] Even if these claims were not untimely and abandoned, and Plaintiffs could

---

[48] Plaintiffs again incorrectly contend that the *RPI v. DB* order denying DBNTC's motion for summary judgement collaterally estops Defendant from opposing this request for summary judgment with respect to

prove materiality of the alleged document defects, Plaintiffs still would not be entitled to the requested judgments.

As Plaintiffs concede, the GAs for each of these Trusts provide that Defendant shall pursue legal remedies against the relevant responsible parties only "if it gets written direction from the Depositor." *Id.* at 51.  Plaintiffs' motion is based on the premise that "DB was required, but failed to notify the Depositor of loans with Mortgage File defects," such that the depositor could direct Defendant.   However, Plaintiffs cite no evidence showing that Defendant failed to notify the Depositors of the document exceptions.  Nor could they.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████  DSUF ¶ 1175.  Plaintiffs' motion is therefore based on a disputed (and false) factual premise and should be denied.

## VI.   PLAINTIFFS HAVE NOT PLED THAT DEFENDANT HAD OR BREACHED A DUTY ARISING FROM REG AB CERTIFICATIONS TO MONITOR SERVICERS, AND DEFENDANT HAD NO SUCH DUTY

As their final argument for summary judgment, Plaintiffs contend that, with respect to 21 Trusts, Defendant somehow had, and breached, a contractual duty to monitor servicers based on Defendant's obligation to deliver annual Regulation AB compliance certifications. Mtn. at 54-58. Summary judgment should be denied because Plaintiffs have not pled this claim and, in any event, Defendant had no such duty.

---

these eight Trusts.  Mtn. at 48-53.  That order has no preclusive effect.  *Supra* § III.A.  Moreover, the *RPI v. DB* order did not even discuss any enforcement duty relating to loans with incomplete mortgage files. *See generally RPI v. DB*, 2016 WL 439020.

A.     **Summary Judgment Should Be Denied Because Plaintiffs Are Not Asserting
Any Claim Relating to Defendant's Reg AB Certifications**

Regulation AB (often referred to as "Reg AB") imposes disclosure requirements for public offerings of asset-backed securities ("ABS") and for reporting by ABS issuers.  Amongst other things, if an ABS issuer is required to file an annual SEC Form 10-K, it must attach a Reg AB Item 1122 report for each party participating in a "servicing function."  17 C.F.R. § 240.15d-18.  While the term "servicing" is typically used in the mortgage industry to refer to mortgagor-facing activities provided by a mortgage loan servicer (*e.g.*, collecting payments from borrowers, communicating with borrowers about missed payments, foreclosing on properties if necessary), Reg AB uses the term "servicing" far more broadly.  Depending on the roles that they perform in a transaction, RMBS trustees may be considered "servicers" under this regulation and may be required to deliver Reg AB Item 1122 reports to the issuer for limited activities that the trustee performs, such as loan document custody or monthly security payment calculations.  Such reports must contain, amongst other things, "a statement that the party used the criteria in [Item 1122(d)] to assess compliance with the applicable servicing criteria."  17 C.F.R. § 229.1122(a)(2).  Section 229.1122(d)(1) in turn addresses "General Servicing Considerations" and provides for a statement, amongst other things, that "[p]olicies and procedures are instituted to monitor any performance or other triggers and events of default <u>in accordance with the transaction agreements</u>."

Based purely on the fact that Reg AB contains the words "servicer" and "monitor," Plaintiffs attempt to create a breach of contract claim where none exists.  Specifically, Plaintiffs claim that (i) for 21 Trusts, the GAs contain an ongoing requirement for Defendant to provide Reg AB certifications; (ii) Defendant's Reg AB certifications "asserted that it 'complied in all material respects,' with all criteria applicable to it"; and (iii) Defendant's Reg AB certifications must have been "false" because Defendant was not monitoring mortgage loan servicers.  Mtn. at 54-58.

Plaintiffs' argument fails for multiple reasons.

As an initial matter, the operative complaints do <u>not</u> contain any claim that Defendant had or breached a contractual duty arising from its Reg AB certifications to monitor mortgage loan servicers or that Defendant provided false Reg AB certifications.  DSUF ¶¶ 1176-1177.  Plaintiffs' attempt to assert a new claim in their summary judgment papers would be impermissible under any circumstances, but it is particularly unjust because PL Plaintiffs <u>withdrew</u> this claim in August 2015.[49]  The original December 2014 *Phoenix Light* Complaint and the First Amended Complaint both included a claim that Defendant "provided false Regulation AB certifications."  *Phoenix Light* ECF No. 1 ¶¶ 54-57, 472-75; *Phoenix Light* ECF No. 20 ¶¶ 75-78, 563-66.  However, after Defendant filed its first motion to dismiss showing that any claim relating to Defendant's Reg AB certifications was meritless (*Phoenix Light* ECF No. 29), PL Plaintiffs <u>voluntarily withdrew</u> this claim from their August 2015 Second Amended Complaint.  *See generally Phoenix Light* ECF Nos. 33, 189.  Plaintiffs' attempt to reassert that claim now is, to say the least, improper.

Plaintiffs are not entitled to summary judgment on a claim that is not in the case.  *E.g.*, *Enzo*, 981 F. Supp. 2d at 223 (citing *Avillan*, 483 F. App'x at 639); *Lewis*, 737 F. App'x at 29 (citing *Greenidge*, 446 F.3d at 361).  The Court need not look further at this issue.

### B.    <u>Summary Judgment Should Be Denied for the Additional Reason That Defendant Had No Duty to "Monitor" Mortgage Loan Servicers</u>

Even if the Court overlooked that Plaintiffs are pursuing an unpled claim (and it should not), Plaintiffs are still not entitled to summary judgment.

<u>First</u>, the GAs for each Trust provide that Defendant shall only have those duties

---

[49] Commerzbank (represented by the same counsel as PL Plaintiffs) did not assert any such claim when it filed its action in December 2015.

"specifically set forth" in the GAs, and no others.  DSUF ¶ 1180; *see Elliott Assocs.*, 838 F.2d at 71.  None of the GAs contains any provision requiring Defendant to monitor the servicers.  DSUF ¶ 1181.  Rather, Plaintiffs point to the requirement under the GAs for 21 Trusts that Defendant submit annual Reg AB certifications that include an assessment of its own compliance with Reg AB Item 1122.  Mtn. at 56.  Defendant submitted those certifications, thereby satisfying its contractual obligation.  DSUF ¶ 1182.

Second, Item 1122 of Reg AB does not impose a duty for Defendant to monitor servicers, or override the contractually defined and limited roles of the GA parties by adding new substantive contractual duties.  17 C.F.R. § 229.1122.  Plaintiffs cite no authority to suggest otherwise.

Reg AB imposed a new disclosure regime as to parties' compliance with certain aspects of their respective existing contractual roles.  17 C.F.R. § 229.1100(a).  The language of Reg AB is written broadly to recognize that asset classes, agreements, and allocations of responsibilities differ from transaction to transaction and that even as to specific transactions, different parties that perform different functions must attest to the same Reg AB criteria.  Thus, Reg AB only requires a statement of compliance as to policies and procedures "instituted to monitor performance, or other triggers and events of default in accordance with the transaction agreements."  17 C.F.R. § 229.1122(d)(1)(i).  Here, as set forth above, the "transaction agreements" do not require Defendant to "monitor" a servicer's performance, and the reporting requirement does not change that.  Plaintiffs' interpretation of Reg AB would require the Court to disregard the bargained-for terms of the GAs, imposing a contractual obligation not stated in the contract.  That made-up duty would far exceed Defendant's express duties and be contrary to settled law that an RMBS trustee's duties are limited to those specifically set forth in the GA.  *See Elliott Assocs*, 838 F.2d at 71.

Third, Defendant's interpretation of Reg AB is consistent with how Defendant's auditors

have interpreted these provisions. ████████████████████

████████████████████████████████████

████████████████████████████ DSUF ¶ 1183 (*e.g.*, Handlin Ex. 847).[50]

████████████████████████████ DSUF ¶ 1184.

    <u>Fourth</u>, even if the Court were to conclude that Reg AB imposed a *regulatory* duty to monitor servicers (and it does not), Plaintiffs cannot convert an alleged Reg AB violation into a breach of contract. It is hornbook law that "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). Nothing in Reg AB suggests that Congress intended to create a private right of action. *See El Paso County v. Bank of N.Y. Mellon*, No. A-12-CA-705-SS, 2013 WL 285705, at *3 (W.D. Tex. Jan. 22, 2013), *aff'd sub nom. Welborn v. Bank of N.Y. Mellon Corp.*, 557 F. App'x 383 (5th Cir. 2014) ("Nor do Plaintiffs argue Regulation AB creates a private right of action for them, and the Court finds it does not."). Nor do Plaintiffs provide any authority to support this proposition.

    <u>Fifth</u>, even if the Court were to ignore all of the foregoing and find a contractual duty, the GAs provide that Defendant is fully exculpated for errors of judgment made in good faith or for failing to perform duties that it reasonably believed in good faith that it did not have. DSUF ¶ 1185. Here, Defendant did not believe it had a duty to monitor servicers. DSUF ¶ 1186. The good faith nature of this belief is supported by (i) ████████████████████████ ████; and (ii) Plaintiffs have not identified any court decision having found such a duty.

---

[50] Each party that is required to deliver a report on its assessment of its compliance with the servicing criteria of Item 1122(d) must also deliver an associated attestation report from a registered public accounting firm. 17 C.F.R. § 229.1122.

For all of these reasons, Plaintiffs' request for summary judgment on the theory that Defendant breached a contractual duty to monitor servicers fails.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion for partial summary judgment in its entirety.

Dated: New York, New York
       January 25, 2019

Respectfully submitted,
MORGAN, LEWIS & BOCKIUS, LLP

By: _____

   Michael S. Kraut (mkraut@morganlewis.com)
   Kevin J. Biron (kbiron@morganlewis.com)
101 Park Avenue
New York, New York  10178
Tel:  +1.212.309.6000
Fax:  +1.212.309.6001

*Attorneys for Defendants Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as Trustees*

## <u>CERTIFICATION OF COMPLIANCE</u>

Pursuant to Judge Koeltl's Individual Practice Rule 2.D., I, Kevin J. Biron, hereby certify that this Memorandum of Law in Support of Defendants' Opposition to Plaintiffs' Joint Motion for Partial Summary Judgment consists of 20,387 words, which does not exceed the word limit in Individual Practice Rule 2.D. as modified by Magistrate Judge Freeman's Order dated October 11, 2018 (*Commerzbank v. DBNTC*, No. 15-cv-10031-JGK (S.D.N.Y.), ECF No. 151; *Phoenix Light v. DBNTC*, No. 14-cv-1010    3-JGK (S.D.N.Y.), ECF No. 252), and otherwise complies with Judge Koeltl's Individual Practice formatting rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 25th day of January 2019, at New York, New York.

Kevin J. Biron

## CERTIFICATE OF SERVICE

I, Kevin J. Biron, certify that on January 25, 2019, I caused the following documents to be filed with the Clerk of the Court in redacted form and to be served on all counsel of record by secure file transfer: (i) Memorandum of Law in Support of Defendants' Opposition to Plaintiffs' Joint Motion for Partial Summary Judgment; (ii) Counterstatement of Undisputed Material Facts Pursuant to Rule 56.1 of the Local Civil Rules for the Southern District of New York; (iii) Defendants' Objections to Evidence Cited in Plaintiffs' Joint Motion for Partial Summary Judgment; (iv) the Declaration of Ronaldo Reyes, dated January 24, 2019, and the exhibits thereto; (v) the Declaration of David Co, dated January 23, 2019, and the exhibits thereto; and (vi) the Declaration of Bryan P. Goff, dated January 25, 2019, and the exhibits thereto.

By: _____

Kevin J. Biron